[Crim. No. 3819. Second Dist., Div. Three. Oct. 11, 1944.]

THE PEOPLE, Respondent, v. JEAN SIMPSON, Appellant.

John S. Cooper for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

SHINN, J.—Appellant was charged jointly with Lowell Hanson and George L. Jenks with the crimes of robbery and

kidnaping for the purpose of robbery. Hanson and Jenks pleaded guilty to the robbery count and the charge of kidnaping was dismissed as to them. Appellant stood trial before the court and was convicted of both offenses, the robbery being found to be of the first degree. She appeals from the judgment and from an order denying her motion for a new trial, and gave notice of an appeal from an order denying her motion in arrest of judgment, which is not an appealable order. The points upon which she relies for a reversal are (1) misconduct of the district attorney; (2) that she could not be legally convicted of both offenses, and (3) that the evidence was insufficient to establish her guilt of either offense.

We shall discuss first the alleged insufficiency of the evidence. The victim of the kidnaping and robbery was Dr. Robert J. Kositchek. At about 7:45 in the evening of December 7, 1943, the doctor left his office near Westlake Park in the city of Los Angeles, carrying his medical bag, and was about to enter his car which was parked on the street, when Jenks, Hanson and appellant appeared. Jenks, with a gun in his hand, ordered the doctor into his car, directed Hanson and appellant to enter it, and with the gun at the doctor's back compelled him to drive the car out through Beverly Hills and Hollywood to the San Fernando Valley. On a dead-end street in an isolated district the doctor was ordered out of the car, was stripped of his coat and topcoat, bound, gagged, and left, while the three drove away in his car. They were arrested together in San Bernardino while still in the car; Jenks then having possession of the gun. During the ride to the point where he was evicted from the car the doctor was robbed of $13 which was contained in a wallet that was taken away from him. Appellant rode in the rear seat with Jenks, Hanson in the front seat with the doctor. Appellant's contention is that there was no evidence that she aided and abetted her codefendants or either of them in the kidnaping or robbery, and that she acted throughout unwillingly and involuntarily, under the fear of bodily injury or death at the hands of Jenks.

In February, 1943, appellant was living in San Diego with her husband and her two children, aged thirteen and fourteen, by a former husband. At about that time she met Jenks, a bus driver, while riding in his bus. She started to keep company with him, left her husband and went to Los Angeles

with Jenks, where they lived as husband and wife. Jenks also was married, a fact which appellant did not know at first but learned before her departure with him from San Diego. Appellant and her husband had recently sold their home and appellant had received therefrom the sum of $1,000. She had $300 of this money when she and Jenks went to Los Angeles and after a few days spent there she returned to San Diego and drew from the bank an additional $400. She turned her money over to Jenks, with the exception of $50, and stayed with him at a hotel in Los Angeles for a short time, when they went to Reno and there gambled away practically all of the money. They returned to Los Angeles for a few days and then to San Diego. Jenks enlisted in the army and appellant went to work. Jenks was sent to Camp Roberts near San Miguel and they corresponded with each other until in July, when appellant went to Camp Roberts to be with Jenks. She went to work at the camp and lived in San Miguel; she saw Jenks constantly and was known about camp as his wife. The parties remained there until December 4th, when they took a bus for Los Angeles with the defendant Hanson, also a soldier. They arrived in Los Angeles the following day and lodged at a hotel, where Jenks and appellant were registered as husband and wife. On Monday, December 6th, after discussing the matter with Jenks and Hanson, appellant went out to get a gun, which Jenks told her could be purchased for $5.00, as he had previously priced them, but the cheapest one she found was priced at $15. She returned to the hotel, reported this to Jenks and Hanson and the latter gave her $5.00, which she used with $10 of her own to purchase the gun and four cartridges, which she brought back to the hotel and handed to Jenks, who loaded the gun and placed it or had appellant place it in her suitcase. On the evening of the 7th the three went to a bar in the neighborhood of the doctor's office. They had a couple of drinks there and went out to get a taxi. While they were waiting for the taxi Doctor Kositchek came out of his office and was kidnaped and robbed as related. When Jenks directed Doctor Kositchek to drive, he asked appellant where she wanted to go, to which she made no reply, and Jenks finally suggested that they go towards San Fernando. Except for the handling of Doctor Kositchek's wallet, as hereinafter related, appellant's conduct was entirely passive during the commission of

the crimes. The circumstances of the kidnaping and robbery were testified to by the three defendants substantially as related by Doctor Kositchek. The defendants also gave detailed accounts of their actions from the time they left San Miguel to the time of their arrest. There were minor conflicts in their several stories but none as to the material facts. Defendant Hanson, called as a witness for the defendant, testified that he was 22 years of age, a private in the army; that he had been acquainted with Jenks for some five months and with appellant for about four months; that he and Jenks decided to go to Los Angeles and stopped to pick up Mrs. Simpson; that they arrived on December 5th and were drinking then and on the following day and in the evening. He testified that when they left camp he and Jenks did not intend to return. A statement which he had made to the probation officer was read in evidence under stipulation. In that statement he said that either on Sunday, December 5th, or Monday, they saw they were getting short of money and thought a good way to get money would be to take it from somebody; that Jenks asked appellant to buy a gun, and that he, Hanson, gave appellant $5.00 toward the purchase of the gun, saw her bring it back and Jenks load it and put it in a suitcase. On the day of the robbery they spent the afternoon in a café eating and drinking beer until nearly 5 o'clock, when, at appellant's suggestion, they went out toward Westlake Park, where they had a drink or two at each of two bars. Hanson then saw that Jenks had the gun, not having seen it after it had been put in the suitcase. Jenks stated that he wanted to hold up a taxicab but Hanson and appellant talked him out of it. They left the bar and had walked about two blocks when Jenks "threw the gun" on Doctor Kositchek and the four got into the car. During the ride Jenks directed Hanson to take the doctor's wallet and to take out the money. Hanson assisted in tying up the doctor and the three drove back to the hotel, where Hanson gave appellant $5.00 to get her suitcases and bags which she had checked. He also stated that while they were in the car there was some conversation between Jenks and appellant but that he did not hear what was said. Doctor Kositchek testified that he heard no conversation between Jenks and appellant. Jenks testified that in the hotel room at Los Angeles he had suggested to appellant that she buy a gun "for her protection"; that she could use

as an excuse that she needed it for protection at San Miguel and that she could use that excuse in getting a permit to carry the gun from the police robbery detail. After she had purchased the gun he told her that they were running low of money and that he would have to get hold of money some place and that he was going to use the gun and she told him not to do it; that before they left the hotel on the day of the robbery he told her to take the gun from her suitcase and put it in her purse, which she did. He testified that he took the gun from her purse before they got to the café and that while in the café they discussed robbing the café or a taxicab and appellant said that there were too many people in the café and that he would not get enough money out of a taxicab driver. He testified that Hanson took the money out of the doctor's wallet, handed the wallet to him and that he handed it to appellant and told her to look in it for gas coupons, which she did and reported that she found none. Appellant testified that as they were coming down from San Miguel on the bus she told Jenks that she was going to buy a gun for protection and that after they arrived in Los Angeles Jenks told her to buy a gun for protection and not to pay more than $5.00 for it. She saw him load the gun and heard him say that it would be a good gun to stick up a bank with or to pull a few holdups; that while they were in the café he proposed holding up the café or a taxicab driver and that she told him it would be a very foolish stunt to do because in every bar there is a gun and that there were too many people around. Appellant admitted upon the stand that Jenks had handed her the doctor's wallet; that she had asked for it to see whether they had taken the money, and that she looked through it for gas tickets. She also testified that she acted unwillingly and during the ride in the car was hysterical all of the time. In the statement that she made to the officers and also upon the stand she testified she stated that in San Miguel Jenks had slapped her twice, once quite hard, because she told him she wanted to return to San Diego. He said that if she left him there would be ''drastic results''; that he would follow her and that he would kill her; the next day she announced that she was leaving and Jenks said that he would go with her and that evening they left camp with Hanson; she made up her mind to buy a gun for her protection. While they were in the bar prior to the robbery the conversations about

robbing the café and taxi driver took place. Appellant testified that she did not take these conversations seriously.

We think the evidence was sufficient to justify the court in finding that defendant aided and abetted her codefendants in the commission of the crimes. She did not conceive or instigate them, and it may be conceded that the part which she played in them was a small one. But however limited her activities were, the purchase of the gun and cartridges was the first step in the criminal undertaking and it was an essential step because it provided the codefendants with effective means for the commission of robberies. Another significant act was appellant's carrying the gun on the day of the robbery. She did this at the suggestion of Jenks and not because she considered it necessary to have the gun with her for protection against him, although her explanation of her purchase of the gun was that she feared violence at the hands of Jenks. If that had been her sole motive she would have been entitled to an acquittal. Her presence with her codefendants during the commission of the crimes would not have constituted guilt in the absence of any act or conduct by which she aided and abetted in their commission. But if, when she purchased the gun or when she later carried it in her purse, she was conscious of the fact that her codefendants intended to use it in the perpetration of robberies, she aided and abetted them in their plans in a most substantial way. Against appellant's protestations as to the innocence of her motives are circumstances which weigh heavily against her. The evidence was not such that the trial judge had to believe her story as to her motive in purchasing the gun. There was no evidence as to Jenks having used violence upon appellant except her own. He testified that he had never struck or injured her. Appellant at no time stated to anyone that Jenks had struck her or that she feared him, and she had sought no protection from the authorities although she had had ample opportunity to do so. Appellant made no effort to elude Hanson or Jenks after learning from the statements of the latter that they were running out of money and that he intended to use the gun to get money from someone. Appellant admitted that on the day of the robbery, at Jenks' suggestion, she took the gun out of her suitcase and put it in her purse and she testified that Jenks took it from her purse while she was in the dressing room of the café. Appellant's testimony that she

believed that Jenks was joking when he spoke of committing robberies met with contradiction of a substantial nature. Jenks and Hanson were deserting army service, although there was no direct evidence that appellant knew that they did not intend to return to camp. All three defendants were drinking, they were running out of money and discussed no plans for acquiring additional funds except the plan to commit robbery. It is to be remembered that Hanson contributed $5.00 toward the purchase of the gun, and there is a significant absence of explanation why he should have done so as a mere accommodation to appellant. He could not have been interested in seeing plaintiff arm herself as a protection against Jenks because he had heard nothing upon that score, and his contribution of $5.00 from the small funds on hand must have excited some suspicion in the mind of appellant as to his motive. There is no reason to doubt that the trial judge viewed all of the evidence in the light most favorable to appellant. The tragedy of her situation could not fail to excite the sympathy of any judge or juror. The conclusion that she fell in with the plans of her companions was not an unreasonable deduction from the evidence. When this is said, appellant's hopes for a reversal of the judgment for insufficiency of the evidence are ended.     If a trial judge or jury has determined the facts which establish a defendant's guilt upon substantial evidence and reasonable inferences from facts in evidence, a court of review is bound by such determination. A judgment so founded is not against law. (*People* v. *Pruitt* (1942), 55 Cal.App.2d 272 [130 P.2d 767].)

The foregoing recitation of the evidence disposes of appellant's contention that she took no part in the commission of the crimes except under the influence of fear of Jenks and that she is therefore not legally responsible for her actions. If it be granted that she obeyed Jenks in entering the automobile and throughout the events which followed up to the time of the arrest, this fact would not establish her innocence. She acted voluntarily when she purchased the gun and when she carried it in her purse on the day of the robbery, and those were the acts which constituted aiding and abetting in the commission of the crimes. It was not necessary that she do more and in fact nothing further remained for her to do. The trial court was fully justified in finding that appel-

lant had no reasonable cause to believe and did not believe that her life was in immediate and present danger at the hands of Jenks. In view of that finding, the defense that she acted involuntarily and under duress and fear was not established. (*People* v. *Sanders* (1927), 82 Cal.App. 778, 785 [256 P. 251].)

■ Appellant had the privilege under the law to repudiate the plans of Jenks and Hanson, to leave them and disavow any further acts of cooperation with them. She did not attempt to do this. She testified that while Doctor Kositchek was being tied up and gagged she intended to run away but dropped her purse and was detained until Jenks and Hanson returned to the car. Leaving the scene of the crime would not constitute a legal defense, for the crimes had already been committed. Giving fullest credence to her testimony and that of her codefendants, it would appear that she did no more in the café immediately preceding the commission of the crimes than to persuade Jenks not to rob the café or a taxi driver. She left the café intending to remain in their company, although she must have known that it was their purpose to commit robbery.

■ There was no evidence of any plan of appellant and her codefendants to commit the crime of kidnaping. Jenks evidently conceived the idea of kidnaping Doctor Kositchek when he saw the latter approaching his car, but there was evidence that the three defendants did plan to commit robberies, although appellant's participation in carrying out the plan was limited, as we have stated. The robberies might have been committed in a variety of ways; kidnaping was only one of them. The victim was kidnaped as a means by which he might be robbed. There is no theory under the evidence upon which defendant could have been adjudged guilty of the robbery but not of the kidnaping, for the kidnaping was only incidental to the robbery and not a distinct and independent crime. The defendants are in law deemed to have assumed criminal responsibility for the natural and probable consequences of their undertaking to commit robberies, and included among those consequences would be all of the common uses of guns to commit robberies by force and fear. (*People* v. *King* (1938), 30 Cal.App.2d 185 [85 P.2d 928].) The kidnaping of the victim is not an uncommon means of robbing him.

█ A further contention of appellant is that the district attorney was guilty of misconduct in failing to call as witnesses for the People the codefendants Jenks and Hanson. It seems to be suggested that the district attorney was thereby guilty of suppression of evidence which he was under a duty to disclose and use. We think the point is without merit. The facts testified to by these witnesses tended to establish the guilt rather than the innocence of appellant, and the district attorney was under no duty to use them as witnesses if their testimony was not needed to make out a case for the People. The fact that they made some statements which were favorable to appellant does not change the situation, especially where they were available and were called as witnesses for the defendant.

A further point is that the dismissal of the charge of kidnaping against defendants Jenks and Hanson operated as an acquittal of appellant, since her offense consisted of aiding and abetting her codefendants in the commission of that crime. █ The court was authorized to dismiss the kidnaping charge as to defendants Jenks and Hanson if the dismissal was considered to be in the interests of justice. (Pen. Code, § 1385; *People* v. *Romero* (1936), 13 Cal.App.2d 667 [57 P. 2d 557].) █ The judgment of dismissal was not an adjudication that the crime of kidnaping had not been committed, although it has operated to free the codefendants from further prosecution and from punishment for that crime. They stand as if they had never been prosecuted for the crime of kidnaping. The judgment of dismissal has no greater effect. █ But even if Jenks and Hanson had been acquitted in a separate trial from that of appellant or had been convicted of lesser crimes than those charged in the information, the conviction of appellant, although it was based upon her aiding and abetting in the commission of both crimes, would not have been thereby invalidated. (*People* v. *Bearss* (1858), 10 Cal. 68; *People* v. *Newberry* (1862), 20 Cal. 439; *People* v. *Blackwood* (1939), 35 Cal.App.2d 728 [96 P.2d 982]. See, also, cases cited in note, 24 A.L.R. 599.)

█ The further contention is made that appellant could not be convicted of the crime of robbery and also the crime of kidnaping for the purpose of robbery. Neither crime is necessarily included in the other. Each has elements of criminal action in addition to those which go to make up the

other and, although they were committed in the course of a continuous series of acts, a conviction of both is not forbidden by constitutional immunity from double jeopardy. (*People* v. *McIlvain* (1942), 55 Cal.App.2d 322 [130 P.2d 131]; *People* v. *Bruno* (1934), 140 Cal.App. 460 [35 P.2d 391].)

The judgment and order denying the motion for new trial are affirmed; the attempted appeal from the order denying motion in arrest of judgment is dismissed.

Desmond, P. J., and Wood (Parker), J., concurred.