[No. G023347. Fourth Dist., Div. Three. Aug. 11, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN ALEXANDER MONTES, Defendant and Appellant.

**COUNSEL**

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Stephen R. Anear and Ilana Cohen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BEDSWORTH, J.**—Juan Alexander Montes was convicted of attempted murder, assault with a semiautomatic firearm, assault with a deadly weapon,

exhibiting a firearm, street terrorism, and attendant firearm use and gang enhancements. On appeal, he contends the evidence is insufficient to support some of the counts and the trial court's aiding and abetting instructions were flawed. We affirm.

One night, Montes and several other members of the Orange Krazy Mexicans gang (OKM) were hanging out in the parking lot of a fast-food restaurant when Jorge Garcia pulled in with Eduardo Flores and two females. Garcia expected trouble because he used to belong to a gang called the Varrio Pelones Locos (VPL), a rival of OKM. In fact, two months earlier, Montes and another OKM member had confronted Garcia and Flores at the very same restaurant. During that meeting, Montes hit Flores in the head with a stick.

This time Montes greeted Garcia by dousing his car with soda and yelling, "Fuck VPL." Then, after Garcia parked and exited his car, Montes and his cohorts quickly surrounded him. Garcia pulled a switchblade, but Montes had a three-foot chain, which Garcia described as "kind of thick" and bigger than a wallet chain. Doubling the chain over, Montes struck Garcia on his right shoulder as the other OKM'ers closed in on him.

To save Garcia, Flores yelled something about a gun, which caused the OKM'ers to retreat to their car. Flores then retrieved a pipe from Garcia's car and threw it towards the OKM'ers. After that, Flores and Garcia got in their car and prepared to drive away. However, before they could do so, OKM member Arturo Cuevas retrieved a gun from a nearby vehicle, ran up to Garcia and shot him several times.

Detective Gary Nelson, the prosecution's gang expert, testified members of criminal street gangs such as OKM are expected to back each other up in confrontational situations. This entails using "whatever weapons are handy" to protect a fellow gang member and establish dominance over another gang. Nelson believed the circumstances of this case fit the classic pattern of how "a gang crime escalates from merely yelling something, throwing something, to shooting."

I

 Montes argues his conviction for assault with a deadly weapon must be reversed because, as a matter of law, the chain with which he struck Garcia did not constitute a deadly weapon. We disagree.

 Penal Code section 245, subdivision (a)(1) prohibits "assault upon the person of another with a deadly weapon or instrument other than a

firearm or by any means of force likely to produce great bodily injury[.]" Although the statute does not define the term "deadly weapon," courts have construed it to mean " 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' . . . Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. . . . Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue." (*People* v. *Aguilar* (1997) 16 Cal.4th 1023, 1028-1029 [68 Cal.Rptr.2d 655, 945 P.2d 1204], citations omitted.)

Objects which are not inherently dangerous but which have been found to be a deadly weapon include "a pillow . . . ; an automobile . . . ; a large rock . . . ; a razor blade . . . ; [and] a fingernail file." (*In re Jose R.* (1982) 137 Cal.App.3d 269, 276, fn. 3 [186 Cal.Rptr. 898], citations omitted.) Even an apple may constitute a deadly weapon if it contains a foreign object which is likely to produce great bodily injury when the apple is eaten. (*Id.* at pp. 273-277.)

 Like the above listed items, a chain is not inherently deadly. However, Montes's chain was about three feet long and "kind of thick." He also doubled it over when he swung it at Garcia, indicating he was attempting to inflict maximum harm. Used in this manner, the chain was capable of producing and likely to produce great bodily injury. The jury was therefore entitled to find it constituted a deadly weapon.

## II

 Instructing the jury on aiding and abetting, the trial court stated Montes could be convicted of attempted murder if that offense was a natural and probable consequence of (1) assault with a semiautomatic firearm, (2) simple assault, or (3) breach of the peace for fighting in public. Montes claims the latter two offenses were improperly included as predicate offenses because there is no evidence that he knew Cuevas was armed. We reject this claim.

 In *People* v. *Prettyman* (1996) 14 Cal.4th 248 [58 Cal.Rptr.2d 827, 926 P.2d 1013], the Supreme Court reiterated the well-established principle that ". . . a defendant may be held criminally responsible as an accomplice

not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the 'natural and probable consequence' of the target crime." (*Id.* at p. 261.) The court noted that decisions applying this rule "most commonly involved situations in which a defendant assisted or encouraged a confederate to commit an assault with a deadly weapon or with potentially deadly force, and the confederate not only assaulted but also murdered the victim. In those instances, the courts generally had no difficulty in upholding a murder conviction, reasoning that the jury could reasonably conclude that the killing of the victim was a 'natural and probable consequence' of the assault that the defendant aided and abetted. [Citations.]" (*Id.* at p. 262.)

On the other hand, it is rarely, if ever, true that "an aider and abettor can 'become liable for the commission of a very serious crime' committed by the aider and abettor's confederate [where] 'the target offense contemplated by his aiding and abetting [was] trivial.' " (*People* v. *Prettyman, supra,* 14 Cal.4th at p. 269.) "Murder, for instance, is *not* the natural and probable consequence of trivial activities. To trigger application of the 'natural and probable consequences' doctrine, there must be a close connection between the target crime aided and abetted and the offense actually committed." (*Ibid.*)

Under the circumstances presented in this case, the targeted offenses of simple assault and breach of the peace for fighting in public were not trivial. They arose in the context of an ongoing rivalry between OKM and VPL during which the two gangs acted violently toward each other. This feud spilled over on the night in question when Montes and his gang confronted Garcia in the parking lot. From the start, the confrontation was punctuated by threats and weaponry. And when it was clear the chain-wielding Montes and his gang were too much for Garcia, Flores shouted something about a gun, which in turn prompted Cuevas to obtain a firearm and shoot Garcia.

As gang expert Nelson explained, these facts represent a textbook example of how a gang confrontation can easily escalate from mere shouting and shoving to gunfire. There can be little question that the target offenses of assault and breach of the peace were closely connected to the shooting. Nonetheless, relying on *People* v. *Butts* (1965) 236 Cal.App.2d 817 [46 Cal.Rptr. 362], Montes insists he cannot be held responsible for Cuevas's conduct because he did not know Cuevas had a gun.

In *Butts,* defendants Otwell and Butts were involved in a brawl with a group of strangers. Although the altercation began as a fistfight, Otwell

eventually pulled a knife and fatally stabbed one of his foes. The court decided Butts could not be held responsible for the killing under aiding and abetting principles because there was "no evidence that [he] advised and encouraged use of a knife, that he had advance knowledge of Otwell's wrongful purpose to use a knife or that he shared Otwell's criminal intent to resort to a dangerous weapon." (*People* v. *Butts, supra,* 236 Cal.App.2d at p. 836.) In other words, Butts was off the hook for the stabbing because he was aware only of a fistfight, not a knife fight. (*Id.* at p. 837.)

To the extent *Butts* requires one accused of aiding and abetting to know of and encourage the perpetrator's intended use of a weapon, it is out of step with Supreme Court authority. (*People* v. *Godinez* (1992) 2 Cal.App.4th 492, 501, fn. 5 [3 Cal.Rptr.2d 325].) "The only requirement is that defendant share the intent to facilitate the *target* criminal act and that the crime committed be a foreseeable consequence of the target act. [Citation.]" (*Ibid.*)

*Butts* is also more than three decades old, a remnant of a different social era, when street fighters commonly relied on fists alone to settle disputes. Unfortunately, as this case illustrates, the nature of modern gang warfare is quite different. When rival gangs clash today, verbal taunting can quickly give way to physical violence and gunfire. No one immersed in the gang culture is unaware of these realities, and we see no reason the courts should turn a blind eye to them. Given the great potential for escalating violence during gang confrontations, it is immaterial whether Montes specifically knew Cuevas had a gun. (See *People* v. *Godinez, supra,* 2 Cal.App.4th at p. 501, fn. 5 [". . . although evidence indicating whether the defendant did or did not know a weapon was present provides grist for argument to the jury on the issue of foreseeability of a homicide, it is not a necessary prerequisite"]; *People* v. *Montano* (1979) 96 Cal.App.3d 221, 227 [158 Cal.Rptr. 47] [defendant's liability for aiding and abetting an attempted murder does not depend on his awareness that fellow gang members had deadly weapons in their possession].)

## III

In a related argument, Montes maintains his convictions for assault with a semiautomatic firearm and exhibiting a firearm must be reversed for lack of evidence he knew Cuevas was armed. But as we explained above, the circumstances in this case were such that it was reasonably foreseeable the initial confrontation would quickly escalate to gunfire. We therefore uphold Montes's convictions.

The judgment is affirmed.

Crosby, Acting P. J., and Scoville, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied November 17, 1999.

---

*Retired Presiding Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.