(Slip Opinion)          OCTOBER  TERM,  2006                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GONZALES, ATTORNEY GENERAL *v*. DUENAS-ALVAREZ

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 05–1629.   Argued December 5, 2006—Decided January 17, 2007

Respondent, a permanent resident alien, was convicted of violating Cal. Veh. Code Ann. §10851(a), under which "[a]ny person who drives or takes a vehicle not his or her own, without the consent of the owner . . . , or *any person who is a party or an accessory to or an accomplice in* the driving or unauthorized taking or stealing, *is guilty* of a public offense." (Emphasis added.)  The Federal Government then sought to remove respondent from the United States as an alien convicted of "a theft offense . . . for which the term of imprisonment [is] at least one year," 8 U. S. C. §1101(a)(43)(G); §1227(a)(2)(A).   The Government claimed that the California conviction qualified as such a "theft offense" under the framework set forth in *Taylor* v. *United States*, 495 U. S. 575.  In *Taylor,* the Court considered whether a prior conviction for violating a state statute criminalizing certain burglary-like behavior fell within the term "burglary" for sentence-enhancement purposes under 18 U. S. C. §924(e).   This Court held that Congress meant that term to refer to "burglary" in "the generic sense in which the term is now used in the criminal codes of most States," *id.*, at 598; and that a sentencing court seeking to determine whether a particular prior conviction was for generic burglary should normally look to the state statute defining the crime of conviction, not to the facts of the particular prior case, *id.*, at 599–600; but that where state law defines burglary broadly to include crimes falling outside generic "burglary," the sentencer should "go beyond the mere fact of conviction" and examine, *e.g.,* the charging document and jury instructions to determine whether the earlier "jury was actually required to find all the elements of generic burglary," *id.*, at 602.  The Federal Immigration Judge and the Bureau of Immigration Appeals (BIA) found

respondent removable, but the Ninth Circuit, summarily remanded
in light of its earlier *Penuliar* decision holding that "aiding and abet-
ting" a theft is not itself a crime under the generic definition of theft.

*Held:* The term "theft offense" in 8 U. S. C. §1101(a)(43)(G) includes the
crime of "aiding and abetting" a theft offense. Pp. 5–11.

    (a) One who aids or abets a theft, like a principal who actually par-
ticipates, commits a crime that falls within the scope of the generic
theft definition accepted by the BIA and the Ninth and other Cir-
cuits: the "taking of property or an exercise of control over property
without consent with the criminal intent to deprive the owner of
rights and benefits of ownership, even if such deprivation is less than
total or permanent." *Penuliar* v. *Gonzales*, 435 F. 3d 961, 969. Since,
as the record shows, state and federal criminal law now uniformly
treats principals and aiders and abettors alike, "the generic sense in
which" the term "theft" "is now used in the criminal codes of most
States," *Taylor, supra,* at 598, covers such "aiders and abettors" as
well as principals. And the criminal activities of these aiders and
abettors of a generic theft thus fall within the scope of the term
"theft" in the federal statute. Pp. 5–6.

    (b) The Court rejects respondent's argument that Cal. Veh. Code
§10851, through the California courts' application of a "natural and
probable consequences" doctrine, creates a subspecies of the crime
falling outside the generic "theft" definition. The fact that, under
California law, an aider and abettor is criminally responsible not only
for the crime he intends, but also for any crime that naturally and
probably results from his intended crime, does not in itself show that
the state statute covers a nongeneric theft crime. Relatively few ju-
risdictions have expressly rejected the "natural and probable conse-
quences" doctrine, and many States and the Federal Government ap-
ply some form or variation of that doctrine or permit jury inferences
of intent in circumstances similar to those in which California has
applied the doctrine. To succeed, respondent must show something
*special* about California's version of the doctrine. His attempt to
show that, unlike most other States, California makes a defendant
criminally liable for conduct he did not intend, not even as a known
or almost certain byproduct of his intentional acts, fails because the
California cases respondent cites do not show that California's law is
applied in such a way that is somehow broader in scope than other
States' laws. Moreover, to find that state law creates a crime outside
the generic definition of a listed crime in a federal statute requires a
realistic probability, not a theoretical possibility, that the State
would apply its statute to conduct falling outside the generic defini-
tion. To make that showing, an offender must at least point to his
own case or other cases in which the state courts in fact did apply the

Syllabus

statute in the special (nongeneric) manner for which he argues. Respondent makes no such showing. Pp. 6–10.

    (c) Respondent's additional claims—that §10851 (1) holds liable accessories after the fact, who need not be shown to have committed a theft, and (2) applies to joyriding, which falls outside the generic "theft" definition—are not considered here because they do not fall within the terms of the question presented, the lower court did not consider them, and this Court declines to reach them in the first instance. Pp. 10–11.

176 Fed. Appx. 820, vacated and remanded.

    BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, SOUTER, THOMAS, GINSBURG, and ALITO, JJ., joined, and in which STEVENS, J., joined, as to Parts I, II, and III–B. STEVENS, J., filed an opinion concurring in part and dissenting in part.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–1629

## ALBERTO R. GONZALES, ATTORNEY GENERAL, PETITIONER *v.* LUIS ALEXANDER DUENAS-ALVAREZ

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[January 17, 2007]

JUSTICE BREYER delivered the opinion of the Court.

Immigration law provides for removal from the United States of an alien convicted of "a *theft offense* (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year." 8 U. S. C. §1101(a)(43)(G) (emphasis added); §1227(a)(2)(A). The question here is whether the term "theft offense" in this federal statute includes the crime of "*aiding and abetting*" a theft offense. We hold that it does. And we vacate a Ninth Circuit determination to the contrary.

I

The Immigration and Nationality Act, 66 Stat. 163, 8 U. S. C. §1101 *et seq.,* lists a set of offenses, conviction for any one of which subjects certain aliens to removal from the United States, §1227(a). In determining whether a conviction (say, a conviction for violating a state criminal law that forbids the taking of property without permission) falls within the scope of a listed offense (*e.g.*, "theft offense"), the lower courts uniformly have applied the approach this Court set forth in *Taylor* v. *United States*,

495 U. S. 575 (1990). *E.g.*, *Soliman* v. *Gonzales*, 419 F. 3d 276, 284 (CA4 2005); *Abimbola* v. *Ashcroft*, 378 F. 3d 173, 176–177 (CA2 2004); *Huerta-Guevara* v. *Ashcroft*, 321 F. 3d 883, 886–888 (CA9 2003); *Hernandez-Mancilla* v. *INS*, 246 F. 3d 1002, 1008–1009 (CA7 2001).

*Taylor* concerned offenses listed in the federal Armed Career Criminal Act, 18 U. S. C. §924(e) (2000 ed. and Supp. IV). That Act mandates a lengthy prison sentence for offenders with previous convictions for, *e.g.*, a "violent felony"; and the Act sets forth certain specific crimes, *e.g.*, "burglary," included in this category. The Court, in *Taylor,* considered whether a conviction for violating a state statute criminalizing certain burglary-like behavior fell within the listed federal term "burglary." 495 U. S., at 589, 598.

The Court held that Congress meant its listed term "burglary" to refer to a specific crime, *i.e.*, "'burglary'" in "*the generic sense in which the term is now used in the criminal codes of most States*." *Id.*, at 598 (emphasis added). The Court also held that a state conviction qualifies as a burglary conviction, "regardless of" the "exact [state] definition or label" as long as it has the "basic elements" of "generic" burglary, namely "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.*, at 599. The Court added that, when a sentencing court seeks to determine whether a particular prior conviction was for a generic burglary offense, it should normally look not to the facts of the particular prior case, but rather to the state statute defining the crime of conviction. *Id.*, at 599–600.

The Court further noted that a "few States' burglary statutes," "define burglary more broadly" to include both a (generically defined) listed crime and also one or more nonlisted crimes. *Id.,* at 599. For example, Massachusetts defines "burglary" as including not only breaking into "'a building'" but also breaking into a "vehicle" (which falls

outside the generic definition of "burglary," for a car is not a "'building or structure'"). See *Shepard* v. *United States*, 544 U. S. 13, 16, 17 (2005); see also *Taylor*, 495 U. S., at 599 (discussing Missouri burglary statutes). In such cases the Court's "categorical approach" permits the sentencing court "to go beyond the mere fact of conviction" in order to determine whether the earlier "jury was actually required to find all the elements of generic burglary." *Id.*, at 602; see also *Conteh* v. *Gonzales*, 461 F. 3d 45, 54 (CA1 2006) (observing that some courts refer to this step of the *Taylor* inquiry as a "modified categorical approach"). "For example," the sentencing court might examine "the indictment or information and jury instructions" in the earlier case. 495 U. S., at 602. In *Shepard,* we added that, in a nonjury case, the sentencing court might examine not only the "charging document" but also "the terms of a plea agreement," the "transcript of colloquy between judge and defendant," or "some comparable judicial record" of information about the "factual basis for the plea." 544 U. S., at 26.

## II

The case before us concerns the application of the framework just set forth to Luis Duenas-Alvarez, the respondent here, a permanent resident alien of the United States. In 2002, Duenas-Alvarez was convicted of violating Cal. Veh. Code Ann. §10851(a) (West 2000). That section states:

"Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or *any person who is a party or an accessory to or an accomplice in* the driving or unauthorized taking or stealing, *is guilty* of a public of-

fense." (Emphasis added.)

After Duenas-Alvarez was convicted, the Federal Government, claiming that the conviction was for a generic theft offense, began removal proceedings. A Federal Immigration Judge, agreeing with the Government that the California offense is "a theft offense . . . for which the term of imprisonment [is] at least one year," found Duenas-Alvarez removable. 8 U. S. C. §1101(a)(43)(G) (footnote omitted); §1227(a)(2)(A). The Bureau of Immigration Appeals (BIA) affirmed. Duenas-Alvarez sought review of the BIA's decision in the Court of Appeals for the Ninth Circuit.

While respondent's petition for court review was pending, the Ninth Circuit, in *Penuliar* v. *Ashcroft,* 395 F. 3d 1037 (2005), held that the relevant California Vehicle Code provision, §10851(a), sweeps more broadly than generic theft. See *id.*, at 1044–1045. In particular, the court said that generic theft has as an element the taking or control of others' property. But, the court added, the California statutory phrase "'[who] is a party or an accessory . . . or an accomplice'" would permit conviction "for aiding and abetting a theft." *Id.*, at 1044 (emphasis deleted). And the court believed that one might "aid" or "abet" a theft without taking or controlling property. *Id.,* at 1044–1045 (citing *Martinez-Perez* v. *Ashcroft,* 393 F. 3d 1018 (CA9 2004), withdrawn and amended, 417 F. 3d 1022 (2005)). Hence, in the Court of Appeals' view, the provision must cover some generically defined "theft" crimes and also some other crimes (aiding and abetting crimes) that, because they are not generically defined "theft" crimes, fall outside the scope of the term "theft" in the immigration statute. 395 F. 3d, at 1044–1045.

The Ninth Circuit subsequently heard Duenas-Alvarez's petition for review and summarily remanded the case to the agency for further proceedings in light of *Penuliar*.

176 Fed. Appx. 820 (2006). We granted the Government's petition for certiorari in order to consider the legal validity of the Ninth Circuit's holding set forth in *Penuliar* and applied here, namely the holding that "aiding and abetting" a theft is not itself a crime that falls within the generic definition of theft. We conclude that the Ninth Circuit erred.

## III

The Ninth Circuit, like other Circuits and the BIA, accepted as a generic definition of theft, the "taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Penuliar* v. *Gonzales*, 435 F. 3d 961, 969 (2006) (internal quotation marks omitted). See *Abimbola*, 378 F. 3d, at 176 (analyzing the BIA's definition and citing cases from three other Circuits, including the Ninth Circuit, approving that definition). The question before us is whether one who aids or abets a theft falls, like a principal, within the scope of this generic definition. We conclude that he does.

The common law divided participants in a felony into four basic categories: (1) *first-degree principals*, those who actually committed the crime in question; (2) *second-degree principals,* aiders and abettors present at the scene of the crime; (3) *accessories before the fact*, aiders and abettors who helped the principal before the basic criminal event took place; and (4) *accessories after the fact*, persons who helped the principal after the basic criminal event took place. See *Standefer* v. *United States*, 447 U. S. 10, 15 (1980). In the course of the 20th century, however, American jurisdictions eliminated the distinction among the first three categories. *Id.*, at 16–19; *Nye & Nissen* v. *United States*, 336 U. S. 613, 618 (1949).

Indeed, every jurisdiction—all States and the Federal

Government—has "expressly abrogated the distinction" among principals and aiders and abettors who fall into the second and third categories. 2 W. LaFave, Substantive Criminal Law §13.1(e), p. 333 (2d ed. 2003) (LaFave). The Solicitor General has presented us with a comprehensive account of the law of all States and federal jurisdictions as well. And we have verified that these jurisdictions treat similarly principals and aiders and abettors who fall into the second or third common-law category. See Appendix A, *infra*. Since criminal law now uniformly treats those who fall into the first three categories alike, "the generic sense in which" the term "theft" "is now used in the criminal codes of most States," *Taylor,* 495 U. S., at 598, covers such "aiders and abettors" as well as principals. And the criminal activities of these aiders and abettors of a generic theft must themselves fall within the scope of the term "theft" in the federal statute.

### A

Duenas-Alvarez does not defend the Ninth Circuit's position. He agrees with the Government that generically speaking the law treats aiders and abettors during and before the crime the same way it treats principals; and that the immigration statute must then treat them similarly as well. Instead, Duenas-Alvarez argues that the California Vehicle Code provision in other ways reaches beyond generic theft to cover certain nongeneric crimes.

Duenas-Alvarez points out that California defines "aiding and abetting" such that an aider and abettor is criminally responsible not only for the crime he intends, but also for any crime that "naturally and probably" results from his intended crime. *People* v. *Durham*, 70 Cal. 2d 171, 181, 449 P. 2d 198, 204 (1969) ("'aider and abettor . . . liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged'" (quoting *People* v. *Villa*, 156 Cal. App. 2d 128, 134

(1957); emphasis deleted). This fact alone does not show that the statute covers a nongeneric theft crime, for relatively few jurisdictions (only 10 in Duenas-Alvarez's own view) have expressly rejected the "natural and probable consequences" doctrine. See Brief for Respondent 21–22; Appendix B, *infra.* Moreover, many States and the Federal Government apply some form or variation of that doctrine, or permit jury inferences of intent in circumstances similar to those in which California has applied the doctrine, as explained below. See Appendix C, *infra.* To succeed, Duenas-Alvarez must show something *special* about California's version of the doctrine—for example, that California in applying it criminalizes conduct that most other States would not consider "theft."

Duenas-Alvarez attempts to make just such a showing. In particular, he says that California's doctrine, unlike that of most other States, makes a defendant criminally liable for conduct that the defendant did not intend, not even as a known or almost certain byproduct of the defendant's intentional acts. See 1 LaFave §5.2(a), at 341 (person intends that which he knows "is practically certain to follow from his conduct"). At oral argument, Duenas-Alvarez's counsel suggested that California's doctrine, for example, might hold an individual who wrongly bought liquor for an underage drinker criminally responsible for that young drinker's later (unforeseen) reckless driving. See Tr. of Oral Arg. 44. And Duenas-Alvarez refers to several California cases in order to prove his point. See Brief for Respondent 19.

We have reviewed those cases, however, and we cannot agree that they show that California's law is somehow special. In the first case, *People* v. *Nguyen*, 21 Cal. App. 4th 518, 26 Cal. Rptr. 2d 323 (1993), the Third Appellate District in California upheld the jury conviction of individuals who had aided several robberies at houses of prostitution, for aiding and abetting a sexual assault used

by one of the individuals to convince a proprietor, by frightening her, to give up property. *Id.*, at 528, 533–534, 26 Cal. Rptr. 2d, at 329, 333. The court, in upholding the verdict, wrote that "knowledge of another's criminal purpose is not sufficient for aiding and abetting; the defendant *must also share that purpose or intend to commit, encourage, or facilitate the commission of the crime.*" *Id.*, at 530, 26 Cal. Rptr. 2d, at 330 (emphasis added). The court added that "[w]hile the defendants participated in the criminal endeavor the foreseeability of sexual assault went from possible or likely *to certain,* yet *defendants continued to lend their aid and assistance* to the endeavor." *Id.*, at 534, 26 Cal. Rptr. 2d, at 333 (emphasis added). The court said that the jury could find that the defendants'

> "continuing participation in the criminal endeavor aided the perpetrators by providing the control and security they needed to tarry long enough to commit the sexual offense, by helping to convince the victim that resistance would be useless, and by dissuading the victim's employee from any notion she may have formed of going to the victim's assistance."

And the court concluded that:

> "Under these circumstances it will not do for defendants to assert that they were concerned only with robbery and bear no responsibility for the sexual assault." *Id.*, at 533–534, 26 Cal. Rptr. 2d, at 333.

*People* v. *Simpson*, 66 Cal. App. 2d 319 (1944), affirmed a kidnaping and robbery conviction on an aiding and abetting theory. *Id.*, at 322. Although the defendant argued to the appeals court that she and her compatriots had not planned to kidnap the robbery victim, the record showed that she had brought the gun used to intimidate the victim while he was tied up and placed in a car, in

which she and her corobbers rode with the victim to another location while they robbed him. *Id.*, at 322–323. As in *Nguyen,* the Court, noting that kidnaping was the *means* by which the robbery was committed, found that the defendant had the requisite "motive," or intent to commit the kidnaping. 66 Cal. App. 2d, at 326.

*People* v. *Montes*, 74 Cal. App. 4th 1050, 88 Cal. Rptr. 2d 482 (1999), affirmed an attempted murder conviction where a confederate of the defendant shot the victim after the defendant committed armed assault, simple assault, and breach of the peace. *Id.*, at 1055, 88 Cal. Rptr. 2d, at 485. The court found that the conduct for which the appellant was charged with assault and breach of the peace was a "confrontation . . . punctuated by threats and weaponry" "in the context of an ongoing rivalry between . . . two gangs [that] acted violently toward each other." *Ibid.* The court reasoned that the escalating violence, resulting in someone being shot, was a foreseeable consequence of the defendant's intended act of participating in the gang confrontation. *Ibid.*

Although the court in *Montes* applied a more expansive concept of "motive" or "intent" than did the courts in *Nguyen* and *Simpson,* we cannot say that those concepts as used in any of these cases extend significantly beyond the concept as set forth in the cases of other States. See Appendix C, *infra.*

Moreover, in our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the

state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

Because Duenas-Alvarez makes no such showing here, we cannot find that California's statute, through the California courts' application of a "natural and probable consequences" doctrine, creates a subspecies of the Vehicle Code section crime that falls outside the generic definition of "theft."

## B

Duenas-Alvarez makes two additional claims. First, he argues that §10851 holds liable accessories after the fact; and to prove that an individual was an accessory after the fact does not require the government to show that the individual committed a theft. Second, Duenas-Alvarez argues that §10851 applies, not only to auto theft, but also to joyriding, which he argues involves so limited a deprivation of the use of a car that it falls outside the generic "theft" definition. See *Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 N. Y. 303, 146 N. E. 432 (1925) (Cardozo, J.) (citing cases for proposition that a very temporary use is not theft).

We shall not consider these claims. The question that we agreed to decide is whether "'theft offense'" in the federal statute "includes aiding and abetting the commission of the offense." See Brief for Petitioner I. Context makes clear that "aiding and abetting" in this question referred to the use of that term in *Penuliar, i.e.*, to the second and third common-law categories (principal in the second degree, accessory before the fact), see *supra*, at 5, see also Brief for Petitioner 13, and not to "accessory after the fact." Thus neither this claim nor the "joyriding" claim falls within the terms of the question presented. Regardless, the lower court did not consider the claims, and we decline to reach them in the first instance. See *National Collegiate Athletic Assn.* v. *Smith*, 525 U. S. 459, 469–470

Appendix A to opinion of the Court

(1999); *Roberts* v. *Galen of Va., Inc.*, 525 U. S. 249, 253–254 (1999) *(per curiam); United States* v. *Bestfoods*, 524 U. S. 51, 72–73 (1998).

For these reasons we vacate the Ninth Circuit's judgment and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

## APPENDIX TO OPINION OF THE COURT

### A

Ala. Code §§13A–2–20, 13A–2–23 (2006); Alaska Stat. §§11.16.100, 11.16.110 (2004); Ariz. Rev. Stat. Ann. §§13–301, 13–302, 13–303(A) (West 2001); Ark. Code Ann. §§5–2–402, 5–2–403(a) (2006); Colo. Rev. Stat. Ann. §§18–1–601, 18–1–603 (2006); Conn. Gen. Stat. §53a–8(a) (2005); Del. Code Ann., Tit. 11, §271 (1995); D. C. Code §22–1805 (2001); Fla. Stat. §777.011 (2006); Ga. Code Ann. §16–2–20 (2003); Haw. Rev. Stat. §§702–221, 702–222 (1993); Idaho Code §19–1430 (Lexis 2004); Ill. Comp. Stat., ch. 720, §§5/5–1, 5/5–2 (West 2004); Ind. Code §35–41–2–4 (West 2004); Iowa Code §703.1 (2005); Kan. Stat. Ann. §21–3205(1) (1995); Ky. Rev. Stat. Ann. §502.020(1) (West 2006); La. Stat. Ann. §14:24 (West 1997); Me. Rev. Stat. Ann., Tit. 17–A, §57(1) (2006); Md. Crim. Proc. Code Ann. §4–204(b) (Lexis Supp. 2006); Mass. Gen. Laws, ch. 274, §2 (West 2005); Mich. Comp. Laws Ann. §767.39 (West 2000); Minn. Stat. §609.05, subdiv. 1 (2004); Miss. Code Ann. §97–1–3 (2006); Mo. Rev. Stat. §§562.036, 562.041(1) (1999); Mont. Code Ann. §§45–2–301, 45–2–302 (2005); Neb. Rev. Stat. §28–206 (1995); Nev. Rev. Stat. §195.020 (2003); N. H. Rev. Stat. Ann. §626:8 (Supp. 2006); N. J. Stat. Ann. §2C:2–6 (West 2005); N. M. Stat. Ann. §30–1–13 (2004); N. Y. Penal Law Ann. §20.00 (West 2004); N. C. Gen. Stat. Ann. §14–5.2 (2005); N. D. Cent. Code Ann.

§12.1–03–01(1) (Lexis 1997); Ohio Rev. Code Ann. §§2923.03(A), (F) (Lexis 2006); Okla. Stat., Tit. 21, §172 (West 2001); Ore. Rev. Stat. §§161.150, 161.155 (2003); 18 Pa. Cons. Stat. §306 (2002); R. I. Gen. Laws §11–1–3 (2002); S. C. Code Ann. §16–1–40 (2003); S. D. Codified Laws §§22–3–3, 22–3–3.1 (1998); Tenn. Code Ann. §§39–11–401(a), 39–11–402 (2006); Tex. Penal Code Ann. §§7.01, 7.02(a) (West 2003); Utah Code Ann. §76–2–202 (Lexis 2003); Vt. Stat. Ann., Tit. 13, §§3–4 (1998); Va. Code Ann. §18.2–18 (Lexis 2004); Wash. Rev. Code §9A.08.020 (2006); W. Va. Code Ann. §61–11–6 (Lexis 2005); Wis. Stat. §939.05 (2005); Wyo. Stat. Ann. §6–1–201 (2005).

B

Alaska Stat. §11.16.110; *Riley* v. *State*, 60 P. 3d 204, 214, 219–221 (Alaska App. 2002); *Tarnef* v. *State*, 512 P. 2d 923, 928 (Alaska 1973); *State* v. *Phillips*, 202 Ariz. 427, 435–437, 46 P. 3d 1048, 1056–1058 (2002); *State* v. *Wall*, 212 Ariz. 1, 4–5, 126 P. 3d 148, 151–152 (2006) (en banc); Colo. Rev. Stat. Ann. §18–1–603; *Bogdanov* v. *People,* 941 P. 2d 247, 250–252, and n. 8 (en banc), as amended by 955 P. 2d 997 (Colo. 1997) (en banc), disapproved of on other grounds by *Griego* v. *People*, 19 P. 3d 1, 7–8 (Colo. 2001) (en banc); *Wilson-Bey* v. *United States*, 903 A. 2d 818, 821–822 (D. C. 2006) (en banc); *Kitt* v. *United States*, 904 A. 2d 348, 354–356 (D. C. 2006); *Commonwealth* v. *Richards*, 363 Mass. 299, 305–308, 293 N. E. 2d 854, 859–860 (1973); *Commonwealth* v. *Daughtry*, 417 Mass. 136, 137–139, 627 N. E. 2d 928, 930–931 (1994); Mont. Code Ann. §45–2–302; *State ex rel. Keyes* v. *Montana 13th Jud. Dist. Ct.*, 288 Mont. 27, 32–35, 955 P. 2d 639, 642–643 (1998); *Sharma* v. *State*, 118 Nev. 648, 653–657, 56 P. 3d 868, 871–873 (2002); cf. *Bolden* v. *State*, 124 P. 3d 191, 200 (Nev. 2005); *State* v. *Carrasco*, 1997–NMSC–047, ¶¶5–9, 946 P. 2d 1075, 1079–1080; *State* v. *Bacon*, 163 Vt. 279, 286–292,

658 A. 2d 54, 60–63 (1995); *State* v. *Pitts*, 174 Vt. 21, 23–27, 800 A. 2d 481, 483–485 (2002).

## C

See, *e.g.*, 2 LaFave §13.3(b), at 361–362, nn. 27–29 (2d ed. 2003 and Supp. 2007) (identifying cases applying the doctrine in California, Delaware, Illinois, Indiana, Iowa, Kansas, Maine, Minnesota, Tennessee, and Wisconsin, as well as in other States where the continued viability of the doctrine is unclear); *State* v. *Medeiros*, 599 A. 2d 723, 726 (R. I. 1991) (aider and abettor intends natural and probable consequences of his acts). See also *Beasley* v. *State*, 360 So. 2d 1275, 1278 (Fla. App. 1978); Ga. Code Ann. §16–2–20; *Jackson* v. *State*, 278 Ga. 235, 235–237, 599 S. E. 2d 129, 131–132 (2004); *Jordan* v. *State*, 272 Ga. 395, 395–397, 530 S. E. 2d 192, 193–194 (2000); *Crawford* v. *State*, 210 Ga. App. 36, 36–37, 435 S. E. 2d 64, 65 (1993); *State* v. *Ehrmantrout*, 100 Idaho 202, 595 P. 2d 1097 (1979); *State* v. *Meyers*, 95–750, pp. 5–7 (La. App. 11/26/96), 683 So. 2d 1378, 1382; *State* v. *Holmes*, 388 So. 2d 722, 725–727 (La. 1980); *People* v. *Robinson*, 475 Mich. 1, 8–9, 715 N. W. 2d 44, 49 (2006); *Welch* v. *State*, 566 So. 2d 680, 684–685 (Miss. 1990); *State* v. *Roberts*, 709 S. W. 2d 857, 863, and n. 6 (Mo. 1986) (en banc); *State* v. *Ferguson*, 20 S. W. 3d 485, 497 (Mo. 2000) (en banc); *State* v. *Logan*, 645 S. W. 2d 60, 64–65 (Mo. App. 1982); *State* v. *Leonor*, 263 Neb. 86, 95–97, 638 N. W. 2d 798, 807 (2002); N. J. Stat. Ann. §2C:2–6 (West 2005); *State* v. *Torres*, 183 N. J. 554, 566–567, 874 A. 2d 1084, 1092 (2005); *State* v. *Weeks*, 107 N. J. 396, 401–406, 526 A. 2d 1077, 1080–1082 (1987); Ohio Rev. Code Ann. §2923.03; *State* v. *Johnson*, 93 Ohio St. 3d 240, 242–246, 754 N. E. 2d 796, 799–801 (2001); *State* v. *Herring*, 94 Ohio St. 3d 246, 248–251, 762 N. E. 2d 940, 947–948 (2002); Ore. Rev. Stat. §161.155; *State* v. *Pine*, 336 Ore. 194, 203–205, 206–208, and n. 6, 82 P. 3d 130, 135, 137, and n. 6 (2003); *State* v. *Anlauf*, 164

Ore. App. 672, 674–677, and n. 1, 995 P. 2d 547, 548–549, and n. 1 (2000); S. D. Codified Laws §22–3–3; *State* v. *Tofani*, 2006 SD 63, ¶¶ 31–52, 719 N. W. 2d 391, 400–405; *Hudgins* v. *Moore*, 337 S. C. 333, 339, n. 5, 524 S. E. 2d 105, 108, n. 5 (1999); *State* v. *Richmond*, 90 S. W. 3d 648, 654–656 (Tenn. 2002); Tex. Penal Code Ann. §7.02; *Ex parte Thompson*, 179 S. W. 3d 549, 552 (Tex. Crim. App. 2005); *Gordon* v. *State*, 640 S. W. 2d 743, 758 (Tex. App. 1982); Utah Code Ann. §76–2–202; *State* v. *Alvarez*, 872 P. 2d 450, 461 (Utah 1994); *State* v. *Crick*, 675 P. 2d 527, 534 (Utah 1983); *State* v. *Rodoussakis*, 204 W. Va. 58, 77, 511 S. E. 2d 469, 488 (1998); *Jahnke* v. *State*, 692 P. 2d 911, 921–922 (Wyo. 1984); *Fales* v. *State*, 908 P. 2d 404, 408 (Wyo. 1995); *United States* v. *Edwards*, 303 F. 3d 606, 637 (CA5 2002), cert. denied, 537 U. S. 1192 (2003); *United States* v. *Walker*, 99 F. 3d 439, 443 (CADC 1996); *United States* v. *Miller*, 22 F. 3d 1075, 1078–1079 (CA11 1994); *United States* v. *Moore*, 936 F. 2d 1508, 1527 (CA7), cert. denied, 502 U. S. 991 (1991); *United States* v. *Graewe*, 774 F. 2d 106, 108, n. 1 (CA6 1985), cert. denied, 474 U. S. 1068 and 1069 (1986); *United States* v. *Barnett*, 667 F. 2d 835, 841 (CA9 1982); *United States* v. *De-LaMotte*, 434 F. 2d 289, 293 (CA2 1970), cert. denied, 401 U. S. 921 (1971).

# SUPREME COURT OF THE UNITED STATES

No. 05–1629

ALBERTO R. GONZALES, ATTORNEY GENERAL, PETITIONER *v.* LUIS ALEXANDER DUENAS-ALVAREZ

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[January 17, 2007]

JUSTICE STEVENS, concurring in part and dissenting in part.

While I join Parts I, II, and III–B of the Court's opinion, as well as its judgment, I do not join Part III–A. I am not prepared to disagree with anything said in Part III–A, but I believe we would be well advised to withhold comment on issues of California law until after they have been addressed by the Court of Appeals in the first instance. Limiting our decision to the question we granted certiorari to answer, though not a rigid rule, is generally prudent. Doing so seems particularly wise whenever reaching beyond the question presented requires analysis of disputed issues of state law. Because circuit judges are generally more familiar with the law of the States within their respective jurisdictions than we are, we have often followed the sound practice of deferring to the courts of appeals on such matters even when we did not necessarily share their views. See, *e.g., Haring* v. *Prosise*, 462 U. S. 306, 314 (1983); *Bishop* v. *Wood*, 426 U. S. 341, 345–346, and n. 10 (1976) (collecting cases); see also *Elk Grove Unified School Dist.* v. *Newdow*, 542 U. S. 1, 16 (2004). I would adhere to that settled practice in this case.