Filed 3/9/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G059940 |
|       v. | (Super. Ct. No. 08WF0147) |
| HECTOR GENARO PACHECO, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Michael A. Leversen, Judge. Reversed and remanded with directions.

Susan L. Jordan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Lynne G. McGinnis and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

In 2008, defendant Hector Genaro Pacheco and other gang members jumped two people. One victim died, the other survived. A jury found Pacheco guilty of first degree murder as an aider and abettor, attempted murder, and gang participation. The jury also found true a gang special circumstance sentencing enhancement.

In 2019, Pacheco filed a Penal Code section 1170.95 petition seeking to vacate his murder conviction.[1] The trial court denied the petition at the prima facie stage.

On appeal, the Attorney General argues the jury's true finding on the gang special circumstance instruction causes Pacheco to be ineligible for relief under section 1170.95 as a matter of law. We disagree.

The trial court instructed the jury on the natural and probable consequences theory, which is no longer a valid theory of murder liability. While the gang special circumstance instruction told the jurors they needed to find Pacheco had the requisite intent to kill (the mens rea), the instruction did not require the jurors to find that Pacheco directly aided and abetted the target crime of murder (the actus reus). Therefore, without weighing the evidence, the jury's true finding on the gang special circumstance does not conclusively establish Pacheco could be found guilty of murder under current law (that he had the intent to kill, *and* he directly aided and abetted the target crime of murder).

Thus, we reverse the trial court's summary denial of Pacheco's section 1170.95 petition. On remand, the court is directed to issue an order to show cause (OSC) and to conduct an evidentiary hearing as to the murder charge.

Effective January 1, 2022, the Legislature included attempted murder under section 1170.95. (Sen. Bill No. 775 (2021-2022 Reg. Sess.); Stats. 2021, ch. 551, § 2.) Pacheco has informed this court he is filing a separate petition to address his attempted murder conviction, so we will not be addressing that conviction in this appeal.

---

[1] Further undesignated statutory references are to the Penal Code.

# I

## FACTS AND PROCEDURAL BACKGROUND

In 2008, Pacheco (then 14 years old) and his fellow gang members jumped two suspected rival gang members. Abraham Sanchez was shot and killed; the other victim was stabbed and survived.

In 2010, a jury convicted Pacheco and two codefendants of first degree murder, attempted murder, and active gang participation. The jury found Pacheco committed the murder and the attempted murder for the benefit of a gang, he vicariously discharged a firearm as to the murder, and he premeditated and deliberated as to the attempted murder. The jury also found true a special circumstance enhancement: Pacheco committed the murder for a criminal street gang purpose.

The trial court sentenced Pacheco to a term of 50 years to life, plus a consecutive life term. This court affirmed the judgment on appeal. (*People v. Pacheco et al.* (Jan. 30, 2012, G044200) [nonpub. opn.].)

In 2020, Pacheco filed a section 1170.95 petition seeking to vacate his murder conviction and to be resentenced. The trial court denied the petition, finding the enabling legislation was unconstitutional. This court reversed and remanded. (*People v. Pacheco* (July 7, 2020, G058362) [nonpub. opn.].)

In 2021, the trial court denied Pacheco's section 1170.95 petition at the prima facie stage: "In finding the defendant guilty of first-degree murder and the special circumstance to be true, the jury found the defendant acted with the intent to kill. Finding the defendant acted with the intent to kill would allow the petitioner to be convicted of first- or second-degree murder notwithstanding the changes to section 188 and 189 made effective January 1, 2019. Thus, the petitioner is not eligible for relief from his murder conviction under 1170.95." Pacheco filed an appeal.

3

II

DISCUSSION

The trial court denied Pacheco's section 1170.95 petition at the prima facie stage after reviewing the underlying record of conviction and concluding Pacheco was precluded from relief as a matter of law. "This is a purely legal conclusion, which we review de novo." (See *People v. Murillo* (2020) 54 Cal.App.5th 160, 167.)

In the remainder of this discussion, we will: A) review applicable principles of law; B) summarize the relevant portions of Pacheco's record of conviction; and C) analyze the applicable law as applied to the relevant facts.

A. *Applicable Principles of Law*

Generally, a person may be liable for a crime as a direct perpetrator or as an aider and abettor. (§ 31.) An aider and abettor can be held liable for crimes that were intentionally aided and abetted (target offenses); an aider and abettor could also be held liable for any crimes that were not intended but were reasonably foreseeable (nontarget offenses). (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1462-1463.) Liability for intentional, target offenses is known as "direct" aider and abettor liability; liability for unintentional, nontarget offenses is known as the ""'natural and probable consequences" doctrine.'" (*People v. Montes* (1999) 74 Cal.App.4th 1050, 1055.)

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "Through the passage of Senate Bill

4

1437 the Legislature effectively eliminated the natural and probable consequences doctrine as it relates to murder convictions, and reduced the scope of the felony-murder rule." (*People v. Prado* (2020) 49 Cal.App.5th 480, 487.)

Although an accomplice can no longer be convicted of murder under the natural and probable consequences theory, an accomplice can still be convicted of murder as a direct aider and abettor. (§§ 188, 189.) "Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187.) "If it is shown that the killing resulted from an intentional act with express or implied malice . . . no other mental state need be shown to establish the mental state of malice aforethought." (§ 188, subd. (b).)

Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer "engaged in the requisite acts and had the requisite intent" to aid and abet the target crime of murder. (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 815.) A direct aider and abettor's "guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1116-1117.)

The Legislature also enacted section 1170.95, which provides a procedure for a person convicted of murder (and now attempted murder and manslaughter) under a no longer valid legal theory to file a petition for relief. If the court determines the petitioner has made the required prima facie showing, the court must issue an OSC. (§ 1170.95, subd. (c).) If the parties do not stipulate the petitioner is entitled to relief, the court must hold an evidentiary hearing. If the prosecution fails to prove petitioner's ineligibility for relief beyond a reasonable doubt, the court must vacate petitioner's invalid conviction and resentence the petitioner accordingly. (§ 1170.95, subd. (d)(3).)

A prima facie showing requires the petitioner to submit a declaration as to the following: "(1) A complaint, information, or indictment was filed against the

5

petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine." [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).)

"The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) At the prima facie stage, the trial court's inquiry "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief . . . , then the trial court should issue an order to show cause." (*Id.* at pp. 980-981.)

## B. Pacheco's Record of Conviction

During Pacheco's trial, the court instructed on aiding and abetting concepts, in part, as follows: "A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a perpetrator, who directly committed the crime. A person is guilty of

the crime whether he committed it personally or aided and abetted the perpetrator who committed it.  [¶]  Under some specific circumstances, *if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime*."  (CALCRIM No. 400, italics added.)

"To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:  [¶]  1. The perpetrator committed the crime;  [¶]  2. The defendant knew that the perpetrator intended to commit the crime;  [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;  [¶]  AND  [¶]  4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.  Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.  [¶]  If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor."  (CALCRIM No. 401.)

The court also instructed on the natural and probable consequences theory: "Before you may decide whether a defendant is guilty of murder or attempted murder, you must decide whether he is guilty of assault with a deadly weapon, assault or disturbing the peace by challenging another person to fight.  [¶]  To prove that the defendant is guilty of murder or attempted murder under this theory, the People must prove that:  [¶]  1. The defendant is guilty of assault with a deadly weapon, assault or disturbing the peace;  [¶]  2. During the commission of the crime of assault with a deadly weapon, assault or disturbing the peace a co-participant in that crime committed the crime of murder or attempted murder;  [¶]  AND  [¶]  3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of

7

murder or attempted murder was a natural and probable consequence of the commission of the crime of assault with a deadly weapon, assault or disturbing the peace." (CALCRIM No. 403.)

During closing argument, the prosecutor told the jury there were multiple "different ways that you get to a verdict of guilty of murder in this case. [¶] One is intentionally committed a murder. Another is if you aid and abet the murder. Another is if you commit an assault with a deadly weapon. But you don't even have to do that. You can aid and abet an assault." The prosecutor later argued, "all we have to prove is the defendant is guilty of assault with a deadly weapon, simple assault, or disturbing the peace, and during the commission of that, a co-participant committed the crime of murder or attempted murder. And under the circumstances a reasonable person in the defendant's position would have known that the commission of murder, attempted murder was a natural and probable consequence of the commission of either an assault with a deadly weapon, an assault, or a challenge to fight."

*C. Analysis and Application*

In Pacheco's section 1170.95 petition, he averred: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] 2a. At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine. [¶] . . . [¶] 3. I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code § § 188 and 189, effective January 1,2019."

Here, under the prima facie test, accepting the facts asserted in Pacheco's section 1170.95 petition as true, he would be entitled to relief. (See *Lewis*, *supra*, 11

8

Cal.5th at p. 971.) Further, the record of conviction supports Pacheco's averments. The trial court instructed the jury on the natural probable consequences theory. And the prosecution argued the natural and probable consequences theory to the jury as one of multiple theories in order to prove Pacheco's guilt for the crime of murder.

Thus, the trial court erred by summarily denying Pacheco's section 1170.95 petition at the prima facie stage. On remand, we direct the court to issue an OSC and to conduct a hearing, as provided for in the statute. (See § 1170.95, subd. (d).)

The Attorney General argues "in finding the special circumstance allegations to be true, the jury necessarily concluded that [Pacheco] personally harbored malice . . . . [Citation.] In reaching this true finding, [Pacheco's] jury had to find '[t]he defendant had the intent to kill at the time of the killing.' [Citation.] Such undisturbed findings preclude resentencing for [Pacheco] under section 1170.95."[2] We disagree.

"Except for strict liability offenses, every crime has two components: (1) an act or omission, sometimes called the actus reus; and (2) a necessary mental state, sometimes called the mens rea. [Citations.] This principle applies to aiding and abetting liability as well as direct liability. An aider and abettor must do something *and* have a certain mental state." (*People v. McCoy*, *supra*, 25 Cal.4th at p. 1117.)

"Thus, proof of [direct] aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct

---

[2] The Attorney General did not argue on appeal that the jury's first degree murder finding (premeditation and deliberation), or the related jury instruction (CALCRIM No. 521), causes Pacheco to be ineligible for relief under section 1170.95 as a matter of law. Therefore, that potential argument has been forfeited on appeal. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1181-1182 [the failure to support claim with adequate argument forfeits the claim as not properly raised]; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument  or citation to authority, we consider the issues waived"].)

9

perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

In this case, as to the gang special circumstance, the trial court instructed the jury, in relevant part, as follows: "The defendant is charged with the special circumstance of committing murder while an active participant in a criminal street gang. . . . [¶] To prove that this special circumstance is true, the People must prove that: [¶] 1. *A perpetrator* intentionally killed Abraham Sanchez; [¶] 2. At the time of the killing, *the defendant* was an active participant in a criminal street gang; [¶] 3. *The defendant* knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; [¶] 4. The murder was carried out to further the activities of the criminal street gang; [¶] AND [¶] 5. *The defendant had the intent to kill at the time of the killing*." (CALCRIM No. 736, italics added.)

Here, the jury's true finding on the gang special circumstance certainly establishes Pacheco intended to kill Abraham Sanchez at the time of his killing (the mens rea). But the gang circumstance instruction does not establish—as a matter of law—that Pacheco *directly aided and abetted* the killing of Sanchez (the actus reus). In other words, without weighing the evidence, it is possible Pacheco intended to kill, but he did nothing to directly "aid, facilitate, promote, encourage, or instigate" the target crime of murder. (See CALCRIM No. 401.)

Critical to our analysis is that the court instructed the jurors they could find Pacheco guilty of murder if he aided and abetted one of the three target crimes (assault with a deadly weapon, assault, or disturbing the peace) and the nontarget crime (murder) was a natural and probable consequence of one of the target crimes. (See CALRIM Nos.

10

400, 401.)  Therefore, the jury could have potentially found Pacheco intended to kill Sanchez under the gang special circumstance enhancement (the mens rea), but under the natural and probable consequence theory, Pacheco only actually aided and abetted the nontarget crime of disturbing the peace (the actus reus).  (See *Lewis*, *supra*, 11 Cal.5th at p. 971, italics added ["The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with *potential merit* from those that are clearly meritless"].)

To reiterate and conclude, at least at the prima facie stage, Pacheco's gang special circumstance enhancement does not establish as a matter of law that Pacheco had both "had the requisite intent" (the mens rea), and he "engaged in the requisite acts" (the actus reus), to prove he directly aided and abetted the target crime of murder.  (See *People v. Duchine*, *supra,* 60 Cal.App.5th 798.)

Thus, the trial court is required to issue an OSC, and Pacheco is entitled to an evidentiary hearing on remand as to his murder conviction.[3]

---

[3] "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019.  The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider *the procedural history of the case* recited in any prior appellate opinion."  (§ 1170.95, subd. (d)(3).)

## III

## DISPOSITION

The trial court's order denying Pacheco's section 1170.95 petition is reversed. On remand, the court is directed to issue an OSC and to conduct a hearing as to the murder conviction.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

12