Filed 2/18/14  P. v. Christian CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C070838 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F05999) |
| v. | |
| GEORGE EDWARD CHRISTIAN et al., | |
| Defendants and Appellants. | |

Two cars carrying Killa Mobb gang members came across a truck at a gas station carrying their rival gang members, the FAB's.  Two Killa Mobb members shot at the truck carrying the seven FAB members.  A jury found the driver of one of the cars carrying Killa Mobb members, defendant George Edward Christian, guilty of shooting at an occupied vehicle and seven counts of attempted murder and found that the crimes were committed for the benefit of the Killa Mobb, all under an aiding and abetting or natural and probable consequences theory.  The jury also found defendant Tevyn

1

Antwyone Wiley guilty of those crimes and enhancements, along with additional enhancements because he was a shooter.

Defendants appeal, raising five contentions related to the evidence and instructions. Finding no prejudicial error, we affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning on October 12, 2008, defendant Christian was driving his Chevy Cavalier and cut off a truck at a gas station that was adjacent to his car. Behind his Cavalier was a Dodge Charger with passenger Killa Mobb member Antonio Cornelius. A Lexus driven by Killa Mobb member Ravneel Atwaal pulled into the gas station and parked at a gas pump located on the passenger side of the Charger. The people in the Cavalier were exchanging hard looks with the people in the truck. Christian shouted "Killa Mobb." Somebody in the truck yelled out " 'FAB.' " Cornelius mentioned something about a gun. Somebody in the truck said, "Hey, man, we don't want to involve that." Cornelius began shooting at the truck.[1] When Cornelius stopped shooting, the truck began driving away. As the truck drove away, defendant Wiley, who was in the front passenger's seat of the Cavalier and was also a member of Killa Mobb, started shooting at the truck. The driver of the truck was hit in the back and one of his passengers was hit in the neck.

Later that night at a friend's house, Atwaal was told by another friend, Malachi Riley, who had been inside the Cavalier during the shooting, that the shooting was between FAB and Killa Mobb.

---

**1**     Cornelius and other Killa Mobb gang members all had just been together at a party where Cornelius was "flashing" a gun in a "flamboyant manner" and either Christian or the man who was driving the Charger, Xavier Whitfield, told him to put the gun away.

2

A week or two after the shooting when Christian was at a party, Christian said to one of the people at whom they fired, "you know we had to fire shots at you, I'll do it again."

At trial, Atwaal testified for the People under an agreement in which Atwaal had to testify truthfully in this case in exchange for a sentence of seven years and eight months in prison (rather than a maximum exposure of approximately 23 years) in another case in which he, Christian, and Whitfield assaulted a man at a gasoline station.

Also testifying for the People was Brian Bell, a gang detective at the Sacramento Police Department. The nature of gang culture was such that gang members knew if they were going to go out and be seen, there was a good chance that they might run into a rival gang and if they did, they needed to have a gun on them to "prepare[]" themselves "in case things were to go south." A common theme in gang-related crimes was they started when one gang member claimed his gang to a rival gang and that claim would eventually escalate into a violent crime. Respect was an integral aspect of gang culture and something for which gang members strived. In his experience, when a rival gang member yelled out his gang name and the opposite party did not respond with some type of confrontation (but only with a hand sign or the name of the rival gang), the opposite party would lose respect, be perceived as weak, and be unsuccessful in committing gang crimes.

In Bell's opinion, Christian was a Killa Mobb gang member because, among other things, about two weeks after the crimes here, Christian and Whitfield and about six to eight other Killa Mobb gang members took part in a "beatdown of an individual at [a] Shell gas station."[2] As a result of that incident, Christian was found guilty of attempted

---

[2]     This was the same incident about which Atwaal testified.

3

murder committed for the benefit of Killa Mobb and Whitfield was found guilty of assault with a deadly weapon committed for the benefit of Killa Mobb.

In Bell's opinion, Wiley also was a Killa Mobb gang member because, among other things, on November 8, 2008, he was with Christian at Yager's bar in Folsom when Christian was arrested for retrieving a handgun after Wiley had gotten in a fight there.

Based on a hypothetical mirroring the facts of the shooting here, Bell was of the opinion the shooting here was committed for the benefit of Killa Mobb.

## DISCUSSION

## I

### *There Was Sufficient Evidence To Support Christian's Convictions*

Christian contends his convictions must be reversed because there was insufficient evidence "he aided and abetted the two shooters" and there was insufficient evidence that the shooting and attempted murders were a natural and probable consequence of disturbing the peace. We disagree, focusing on the natural and probable consequences theory, because there was sufficient evidence supporting this theory to uphold the verdicts against Christian and no affirmative indication the jury rested its verdict on another ground. (See *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 [if there is one valid ground for the verdicts, reversal is not required unless the other ground is invalid and there is "an affirmative indication in the record that the verdict actually did rest on the inadequate ground"].)

As the jury was instructed here, to prove that Christian was guilty of shooting at an occupied motor vehicle and the attempted murders under a natural and probable consequences theory, the People were required to prove that: (1) Christian was guilty of disturbing the peace; (2) the shooting and attempted murders were committed during the disturbance of peace; and (3) a reasonable person in Christian's position would have known that the shooting and attempted murders were a natural and probable consequence of disturbing the peace. The jury was instructed that to be guilty of disturbing the peace,

4

the People were required to prove, among other things, "a defendant used offensive words that were inherently likely to provoke an immediate violent reaction." Christian's argument is that the evidence he disturbed the peace was lacking because there was insufficient evidence he "would have known or should have known that shouting profanities and yelling 'Killa Mob' in the presence of the rival FAB gang members in Taylor's truck would be 'inherently likely to provoke an immediate violent reaction' from the FAB gang members."

Christian's argument is based on the fact that his actions did not in fact provoke a violent reaction from the FAB members. But that is not the standard. As the jury was instructed, Christian's actions merely had to be "inherently likely" to provoke such a reaction. And, here they were. As Detective Bell testified, respect was an integral aspect of gang culture and something for which gang members strived. In his experience, when a rival gang member yelled out his gang name and the opposite party did not respond with some type of confrontation (but only with a hand sign or the name of the rival gang), the opposite party would lose respect, be perceived as weak, and be unsuccessful in committing gang crimes. Detective Bell further testified that a common theme in gang-related crimes was that they started when one gang member claimed his gang to a rival gang and that claim would eventually escalate into a violent crime. As has been noted in other appellate court opinions, "[w]hen rival gangs clash today, verbal taunting can quickly give way to physical violence and gunfire." (*People v. Montes* (1999) 74 Cal.App.4th 1050, 1056; accord, *People v. Medina* (2009) 46 Cal.4th 913, 925-927 [where verbal challenges occur between rival gang members, physical violence is foreseeable].) In that context, "escalation of th[e] confrontation to a deadly level [i]s much closer to inevitable than . . . to unforeseeable." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1376.) Here, given Detective Bell's testimony and the state of the law, the jury could reasonably find that it was inherently likely that Christian's actions in

5

exchanging hard looks with the FAB members and then yelling out his gang's name would provoke an immediate violent reaction from the FAB's.

## II

*The Court's Error In Giving A Pinpoint Instruction*

*About Atwaal's Plea Agreement Did Not Prejudice Wiley*

Wiley contends the trial court erred when it gave a pinpoint instruction that any dispute concerning Atwaal's compliance with his plea agreement was to be resolved by the trial court. He claims "this instruction was error, because the process for resolving a dispute about the conditional plea agreement was not relevant to the jury's task of deciding whether Atwaal's testimony was credible, and the instruction could have confused the jury with prejudice to Wiley." We agree with Wiley there was error, but disagree there was prejudice.

The pinpoint instruction was as follows: "You have heard evidence that Ravneel Atwaal testified pursuant to a[] negotiated plea agreement with the district attorney's office. If there is a dispute about whether Mr. Atwaal has fulfilled the terms of the agreement, it will be the Court that decides Mr. Atwaal's compliance."

The error in telling a jury that the court will determine compliance with the terms of the plea agreement was explained by our Supreme Court in *People v. Fauber* (1992) 2 Cal.4th 792 as follows: it was irrelevant that the jury learn that "the judge[] determin[es] . . . [the witness]'s credibility in the event of any dispute" because it "arguably carried some slight potential for jury confusion, in that it did not *explicitly* state what is implicit within it: that the need for such a determination would arise, if at all, in connection with [the witness]'s sentencing, not in the process of trying defendant's guilt or innocence." (*Id*. at p. 823.)

"Nonetheless," the Supreme Court continued, "we see no possibility that defendant was prejudiced by its admission. The jury could not reasonably have understood [the witness]'s plea agreement to relieve it of the duty to decide, in the course

6

of reaching its verdict, whether [the witness]'s testimony was truthful.  Nor could the jury have been misled by prosecutorial argument.  The prosecutor argued that [the witness] had nothing to gain by lying because the trial court would make a determination of his credibility in the event of a dispute.  The context of the remarks made it clear that determination would occur if the prosecutor sought to repudiate its agreement with [the witness] after trial in defendant's case." (*People v. Fauber*, *supra*, 2 Cal.4th at p. 823.)

The Supreme Court went on to state that its "conclusion is reinforced by the fact that the trial court instructed the jury, before the start of the prosecution's case and after closing argument, that '[e]very person who testifies under oath is a witness.  [Fn. omitted.]  You are the sole judges of the believability of a witness and the weight to be given to his testimony . . . .'  [Fn. and citation omitted.]  We presume, in the absence of any contrary indication in the record, that the jury understood and followed this instruction.  [Citation.]  The prosecutor, in his opening statement, likewise emphasized the jurors' role as sole judges of credibility.  In sum, the reading of [the witness]'s plea agreement did not constitute reversible error." (*People v. Fauber*, *supra*, 2 Cal.4th at pp. 823-824.)

The same is true here of the lack of prejudice.  The prosecutor emphasized in closing argument that it was the jury who decided Atwaal's credibility:  "And at the end of the day, if all of you say, we don't believe Mr. Atwaal, that's your option as a jury.  And I'm not going to say really anything to talk you out of that."  Consistent with this argument, the court instructed the jury, "[y]ou must decide what the facts are.  It is up to all of you, and you alone, to decide what happened, based only on the evidence that has been presented to you in this trial."  "You alone, must judge the credibility or believability of the witnesses."  Thus, the court's error in giving the pinpoint instruction did not prejudice Wiley.

## III

*The Court Did Not Err By Admitting Evidence That Wiley Was*

*A Gang Member Approximately One Month After The Crimes Here*

Wiley contends the court abused its discretion and violated his right to confront the witnesses against him when it admitted evidence that approximately one month after the crimes here, Wiley was associating with Christian at Yager's bar, leading to the inference Wiley was also a gang member.

The at-issue evidence came in through Detective Bell. He testified that it was his opinion Wiley was a Killa Mobb gang member on the date of the crimes here (October 12, 2008) because, among other things, on November 8, 2008, he was with Christian, who was another Killa Mobb gang member, at a bar in Folsom when Christian was arrested for retrieving a handgun after Wiley had gotten in a fight there. The other things that led to Bell's opinion that Wiley was a gang member were Wiley being with other Killa Mobb gang members on the date of the crimes here; Wiley admitted to being a Killa Mobb gang member on his Myspace page and to another detective; he had a gold mouthpiece with the letters KMG, which stood for Killa Mobb Gang; and in his phone, he had an e-mail or text message in which he talked about being a Killa Mobb gang member, a picture of somebody throwing up a Killa Mobb gang sign, and a picture of somebody's hands with the number 1113, which stands for Killa Mobb gang.

Wiley argues that the evidence he was a gang member on November 8, 2008, was not relevant to determining whether he was a gang member on an earlier date, namely, October 12, 2008, which was the date of the current crimes. He is wrong. The length of time between the two dates may affect the weight of the evidence, but a person's gang membership at some point after committing the crime has some tendency in reason to prove that he was a gang member at some point beforehand, namely here, when he committed the at-issues crimes less than a month earlier. (See Evid. Code, § 210 [relevant evidence is "evidence . . . having any tendency in reason to prove . . . any

8

disputed fact that is of consequence to the determination of the action"].)  Here, the time between the two incidents is short and there was nothing to suggest that Wiley's gang membership or affiliation changed between the Yager's bar incident and the current crimes.  As the trial court pointed out when admitting this evidence, gang membership is a "continuing dynamic," especially where the two incidents were close in time.

Wiley also argues that admission of this evidence violated his right to confront the witnesses against him under the Sixth Amendment to the federal Constitution and as articulated in *Crawford v. Washington* (2004) 541 U.S. 36, 61 [158 L.Ed.2d 177, 199]. But the Yager's bar incident was offered to form the basis of the detective's opinion that on the day of the current crimes, Wiley was a member of the Killa Mobb gang.  So called "basis evidence" does not implicate the confrontation clause because it is not introduced for the truth of the matter, but rather, only to assist the jury in evaluating the expert's opinion.  (*People v. Hill* (2011) 191 Cal.App.4th 1104, 1127-1128.)

IV

*Admission Of Riley's Statement To Atwaal That The Shooting Here Was Between FAB And Killa Mobb Did Not Implicate Wiley's Right To Confront The Witnesses Against Him*

Wiley contends in his opening brief that the admission of Riley's statement to Atwaal that the fight here was between FAB and Killa Mobb violated his right to confront the witnesses against him under *People v. Aranda* (1965) 63 Cal.2d 518 and *Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476].  "[T]he rule of *Bruton v. United States*--which is rooted in the confrontation clause . . . --declares that a nontestifying codefendant's extrajudicial self-incriminating statement that inculpates the other defendant is generally unreliable and hence inadmissible as violative of that defendant's right of confrontation and cross-examination . . . ." (*People v. Anderson* (1987) 43 Cal.3d 1104, 1120.)  However, as Wiley correctly concedes in his reply brief, Riley's out-of-court statement did not implicate Wiley's right to confront the witnesses against him because the statement was not testimonial, as it was made between friends in

9

a casual setting.  (See *People v. Arceo* (2011) 195 Cal.App.4th 556, 571 ["the confrontation clause has no application to out-of-court nontestimonial statements [citations] including statements by codefendants"].)

V

*The Court Did Not Err In Admitting Evidence That A Trier Of Fact Had Found That Crimes Committed At A Gasoline Station Were For The Benefit Of Killa Mobb*

Wiley contends the court erred in violation of his right to a fair trial when it admitted evidence that a trier of fact had found the crimes at a the gasoline station committed two weeks after the current crimes were for the benefit of Killa Mobb.  The evidence was that two weeks after the crimes here, Christian and Whitfield and about six to eight other Killa Mobb gang members took part in a "beatdown of an individual at [a] Shell gas station."  As a result of that incident, Christian was found guilty of attempted murder committed for the benefit of Killa Mobb and Whitfield was found guilty of assault with a deadly weapon committed for the benefit of Killa Mobb.

Wiley argues that it was error to admit this evidence because the jury should not have been informed that another trier of fact had found that Killa Mobb was a criminal street gang because that was among the issues this jury had to decide.

Wiley's authority for his argument is irrelevant for at least three reasons.  One, the authority Wiley cites, which is that when a new trial is granted, "the former verdict or finding cannot be used or referred to, either in evidence or in argument" (Pen. Code, § 1180) does not apply because this was not a retrial.  Two, a finding that the gasoline station crimes were committed for the benefit of Killa Mobb had no bearing on whether the crimes here were committed for the benefit of Killa Mobb.  That a gang enhancement may have been found true in one case does not mean it must be found true in another.  The evidence in each case is different, including the evidence regarding the gang's primary activities or the pattern of criminal activity.  And three, the evidence here was not admitted for the truth of the matter (that Killa Mobb was a criminal street gang).

10

Rather, it was admitted to show part of the basis for Detective Bell's opinion that Christian and Whitfield were Killa Mobb gang members.

For these reasons, there was no error, constitutional or otherwise, in admitting this evidence.

DISPOSITION

The judgments are affirmed.


     ROBIE     , J.


We concur:


     HULL     , Acting P. J.


     HOCH     , J.