Filed 3/28/22  P. v. Guadarrama CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059643 |
| v. | (Super. Ct. No. 08ZF0020) |
| PROSPERO RAMIREZ GUADARRAMA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Maria D. Hernandez, Judge.  Reversed and remanded with directions.

Gordon S. Brownell for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In 2011, a jury found defendant Prospero Ramirez Guadarrama guilty of two counts of murder and one count of attempted murder. The jury also found true a gang special circumstance allegation, and a multiple murder special circumstance allegation. The trial court imposed a life sentence.

In 2020, the trial court denied defendant's Penal Code section 1170.95 petition, finding that the jury's true findings on the two special circumstance allegations rendered him ineligible for relief as a matter of law.[1] We disagree.

The trial court instructed the jury on the natural and probable consequences doctrine, which is no longer a valid theory of murder liability. While the special circumstance allegations required the jurors to find defendant acted with the intent to kill (the mens rea), the special circumstance allegations did not require the jurors to find defendant directly aided and abetted the target crime of murder (the actus reus).

Therefore, without weighing the evidence, the jury's true findings on the special circumstance allegations do "not conclusively establish [defendant] could be found guilty of murder under current law (that he had the intent to kill, *and* he directly aided and abetted the target crimes of murder)." (*People v. Pacheco* (March 9, 2022, G059940) __ Cal.App.5th __ [2022 Cal.App.Lexis 192].)

Thus, we reverse the trial court's summary denial of defendant's section 1170.95 petition. On remand, the court is directed to issue an order to show cause (OSC) and to conduct an evidentiary hearing as to the murder charges.

Effective January 1, 2022, the Legislature included attempted murder under section 1170.95. (Sen. Bill No. 775 (2021-2022 Reg. Sess.); Stats. 2021, ch. 551, § 2.) On remand, we direct the trial court to further consider whether defendant can establish a prima facie basis for relief as to his attempted murder conviction.

---

[1] Further undesignated statutory references are to the Penal Code.

# I
## FACTS AND PROCEDURAL BACKGROUND

In 2006, defendant (then 16 years old) was driving in a car with several of his fellow gang members; two of them had guns. The defendant's group came upon a group of suspected rival gang members and they got out of the car. Defendant admitted punching one of the rival group members. Two of defendant's group members then shot three of the rival group members at point-blank range. Two of the victims died, the other victim was seriously injured.

A jury convicted defendant of two counts of first degree murder, one count of premeditated attempted murder, and active gang participation. The jury found true two special circumstance allegations (gang-related murder and multiple murder). The jury also found true allegations that the murders and attempted murder were committed for the benefit of a gang, and defendant vicariously discharged a firearm.

The trial court sentenced defendant to life without the possibility of parole. This court reversed defendant's sentence and remanded for resentencing. (*People v. Guadarrama* (May 9, 2013, G046312) [nonpub. opn.].) The trial court ultimately sentenced defendant to a term of 25 years to life.

In 2019, defendant filed a section 1170.95 petition. The trial court denied the petition at the prima facie stage. The court found the special circumstance allegations rendered defendant ineligible for relief.

Defendant appealed. We asked the parties for further briefing on the effect of Senate Bill No. 775. Defendant argued the legislation had no effect. The Attorney General urged "this court to remand with directions to the trial court to permit the parties to brief whether [defendant] has established a prima facie basis for resentencing relief as to his attempted murder conviction . . . ."

3

II

DISCUSSION

The trial court denied defendant's section 1170.95 petition at the prima facie stage after reviewing the record of conviction and finding he was precluded from relief as a matter of law. "This is a purely legal conclusion, which we review de novo." (See *People v. Murillo* (2020) 54 Cal.App.5th 160, 167.)

In the remainder of this discussion, we will: A) review applicable principles of law; B) summarize the relevant portions of defendant's record of conviction; and C) analyze the applicable law as applied to the relevant facts.

A. *Applicable Principles of Law*

Generally, a person may be liable for a crime as a direct perpetrator or as an aider and abettor. (§ 31.) An aider and abettor can be held liable for crimes that were intentionally aided and abetted (target offenses); an aider and abettor could also be held liable for any crimes that were not intended but were reasonably foreseeable (nontarget offenses). (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1462-1463.) Liability for intentional, target offenses is known as "direct" aider and abettor liability; liability for unintentional, nontarget offenses is known as "the '"natural and probable consequences" doctrine.'" (*People v. Montes* (1999) 74 Cal.App.4th 1050, 1055.)

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "Through the passage of Senate Bill

4

1437 the Legislature effectively eliminated the natural and probable consequences doctrine as it relates to murder convictions, and reduced the scope of the felony-murder rule." (*People v. Prado* (2020) 49 Cal.App.5th 480, 487.)

Although an accomplice can no longer be convicted of murder under the natural and probable consequences theory, an accomplice can still be convicted of murder as a direct aider and abettor. (§§ 188, 189.) "Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187.) "If it is shown that the killing resulted from an intentional act with express or implied malice . . . no other mental state need be shown to establish the mental state of malice aforethought." (§ 188, subd. (b).)

Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer "engaged in the requisite acts and had the requisite intent" to aid and abet the target crime of murder. (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 815.) A direct aider and abettor's "guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1116-1117.)

The Legislature also enacted section 1170.95, which provides a procedure for a person convicted of murder (and now attempted murder and manslaughter) under a no longer valid legal theory to file a petition for relief. If the court determines the petitioner has made the required prima facie showing, the court must issue an OSC. (§ 1170.95, subd. (c).) If the parties do not stipulate the petitioner is entitled to relief, the court must hold an evidentiary hearing. If the prosecution fails to prove petitioner's ineligibility for relief beyond a reasonable doubt, the court must vacate petitioner's invalid conviction and resentence the petitioner accordingly. (§ 1170.95, subd. (d)(3).)

A prima facie showing requires the petitioner to submit a declaration as to the following: "(1) A complaint, information, or indictment was filed against the

5

petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine." [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).)

"The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) At the prima facie stage, the court's inquiry "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980, abrogated on a different point of law in *People v. Lewis, supra*, 11 Cal.5th at p. 963.) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief . . . , then the trial court should issue an order to show cause." (*People v. Drayton, supra*, 47 Cal.App.5th at pp. 980-981.)

## B. *Defendant's Record of Conviction*

During defendant's trial, the court instructed on aiding and abetting concepts, in part, as follows: "A person may be guilty of a crime in two ways. [¶] One, he may have directly committed the crime. I will call that person the perpetrator. [¶]

Two, he may have aided and abetted the perpetrator who directly committed the crime. [¶] A person is guilty of a crime whether he committed it personally, or aided and abetted the perpetrator. Under some circumstances . . . *if the evidence establishes aiding and abetting of one crime a person may also be found guilty of other crimes that occurred during the commission of the first crime*." (Italics added.)

The court also instructed on the natural and probable consequences theory: "To prove that the defendant's guilty of murder, or attempted murder under a natural and probable consequence theory the People must prove that, one, the defendant is guilty of assault with a deadly weapon. [¶] Two, during the commission of the assault with a deadly weapon a co-participant in that assault with a deadly weapon committed a crime of murder or attempted murder. [¶] And three, under all of the circumstances a reasonable person in the defendant's position would have known that the commission of the murder, or attempt murder was a natural and probable consequence of the commission of the assault with a deadly weapon."

During closing argument, the prosecutor told the jury, "I don't know if [defendant] was one of the shooters. And I don't frankly care if he was one of the shooters . . . ." "So, let's talk about this defendant committing an act. Well, gee, what did he do here? We know that he got out of the car. We know that he went and he hit one of the victims here and was engaged in an assault."

"I'm pointing you to two different pathways to a guilty verdict."

"The first is aiding and abetting. I'm going to go into this in a little more detail with you, but the first is aiding and abetting.

"Basically, what that theory says that someone else in the group committed the murders and the attempted murder; but the defendant intended to assist this process while they're out there hunting for enemies and killing people that he intended to help

7

them in some way."

"And moving on to the second pathway to a guilty verdict, it's called the natural and probable consequences. That's really just exactly what it sounds like. That's that the defendant intended to commit an assault with a deadly weapon. That's what he said he got out of the car to do. He intended to commit that and murder and attempted murder are a natural and probable consequence of such an assault."

*C. Analysis and Application*

In defendant's section 1170.95 petition, he averred: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] 2a. At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine. [¶] . . . [¶] 3. I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

Here, under the prima facie test, accepting what is asserted in defendant's section 1170.95 petition as true, he would be entitled to relief. (See *Lewis*, *supra*, 11 Cal.5th at p. 971.) Further, the record of conviction supports defendant's averments. The trial court instructed the jury on the natural probable consequences theory. And the prosecution argued the natural and probable consequences theory to the jury as one of the theories available to prove defendant's guilt for the two counts of murder.

Thus, the trial court erred by summarily denying defendant's section 1170.95 petition at the prima facie stage. On remand, we direct the court to issue an OSC and to conduct a hearing, as provided for in the statute. (See § 1170.95, subd. (d).)

The Attorney General argues defendant's section 1170.95 "petition was

8

properly denied because the jury's true findings on the special circumstances established that he intended to kill." We agree the jury's true findings on the special circumstances established that defendant intended to kill, but the jury's findings do not establish—as a matter of law—that defendant was a direct aider and abettor.

"Except for strict liability offenses, every crime has two components: (1) an act or omission, sometimes called the actus reus; and (2) a necessary mental state, sometimes called the mens rea. [Citations.] This principle applies to aiding and abetting liability as well as direct liability. An aider and abettor must do something *and* have a certain mental state." (*People v. McCoy*, *supra*, 25 Cal.4th at p. 1117.)

"Thus, proof of [direct] aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

Here, as to the multiple murder special circumstance, the court instructed the jury: "If you decide that the defendant is guilty of first degree murder, but was not the actual killer, then when you consider the special circumstance of multiple murder you must also decide whether the defendant acted with the intent to kill." As to the gang special circumstance, the court directly instructed the jury they must find: "The defendant intentionally killed the decedent." However, the prosecutor argued to the jury as to the special circumstance: "So, *when all this language comes up about intentionally killed*, it's his role as an aider and abettor, *or the natural probable consequence of this*; not him as a direct shooter here." (Italics added.)

As to the jury's true findings on the special circumstances certainly

9

establishes defendant intended to kill (the mens rea). But the special circumstance instructions along with the prosecutor's closing argument (conflating the intent to kill element with the natural and probable consequences theory) do not establish—as a matter of law—that defendant *directly aided and abetted* the murders (the actus reus).

In other words, without weighing the evidence, it is possible defendant intended to kill, but he did nothing to directly "aid, facilitate, promote, encourage, or instigate" the target crimes of murder (rather than the target crime of assault with a deadly weapon under the natural and probable consequences theory). (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 971, italics added ["The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with *potential merit* from those that are clearly meritless"].)

To reiterate and conclude, at least at the prima facie stage, the jury's true findings on the special circumstance enhancements do not establish as a matter of law that defendant both "had the requisite intent" (the mens rea), and he "engaged in the requisite acts" (the actus reus), to prove he directly aided and abetted the target crime of murder. (See *People v. Duchine*, *supra,* 60 Cal.App.5th at p. 815.)

Thus, the trial court is required to issue an OSC, and defendant is entitled to an evidentiary hearing on remand as to his murder convictions. On remand, we are further directing the court to appoint counsel, receive briefing from the parties, and to consider defendant's petition to vacate his attempted murder conviction at the prima facie stage. (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)

## III

## DISPOSITION

The trial court's order denying defendant's section 1170.95 petition is reversed.  On remand, the court is directed to issue an OSC and to conduct a hearing as to the murder conviction.  As to the attempted murder conviction, the court is directed to receive further briefing, to consider defendant's section 1170.95 petition at the prima facie stage, and to make any orders and/or conduct any further proceedings consistent with section 1170.95 and recent case law.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.

11