Filed 11/4/24  P. v. Carachure CA4/3
Opinion after recalling remittitur

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059817 |
| v. | (Super. Ct. No. 13CF2054) |
| ARMANDO ANDRES CARACHURE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Kimberly Menninger, Judge. Reversed and remanded with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury found defendant Armando Andres Carachure guilty of first degree murder and active participation in a gang. The jury also found true a gang-murder special circumstance allegation and a gang enhancement. The jury did not find true a weapon enhancement (a knife). The trial court imposed a sentence of life in prison without the possibility of parole.

Carachure later filed a petition for relief under Penal Code section 1170.95 (now section 1172.6).[1] The trial court denied the petition at the prima facie stage, finding that the gang-murder special circumstance precluded Carachure from obtaining relief as a matter of law.

The California Supreme Court subsequently held that a jury's true finding on a gang-murder special circumstance allegation does <u>not</u> preclude a defendant from obtaining relief under section 1172.6 as a matter of law. (*People v. Curiel* (2023) 15 Cal.5th 433, 460–461 (*Curiel*).)

Thus, we reverse the trial court's order denying Carachure's section 1172.6 petition. On remand, the court is directed to issue an order to show cause (OSC) and to conduct an evidentiary hearing.

I.

FACTS AND PROCEDURAL BACKGROUND

In 2013, Carachure was a member of a gang. A witness saw Carachure and one or two other young males chasing a rival gang member through a park. The rival gang member was stabbed in the back numerous times, which resulted in his death.

---

[1] Assembly Bill No. 200 (Reg. Sess. 2021–2022) has since renumbered section 1170.95 as section 1172.6. (See Stats. 2022, ch. 58, § 10.) For clarity, we will generally refer to section 1172.6 in this opinion. All undesignated statutory references are to the Penal Code.

In 2014, the People filed an information charging Carachure with murder and active participation in a criminal street gang. The People further charged a gang-murder special circumstance allegation, a gang sentencing enhancement, and a personal use of a weapon enhancement. The People further alleged two prison priors.

In 2015, the jury found Carachure guilty of first degree murder and active gang participation. The jury found true the gang-murder special circumstance allegation and the gang enhancement. The jury did not find true the personal use of a weapon enhancement. The trial court found true the prison priors and sentenced Carachure to life in prison without the possibility of parole.

In 2016, Carachure challenged a jury instruction and a parole revocation fine on appeal. This court affirmed the judgment. (*People v. Carachure* (Oct. 14, 2016, G051613) [nonpub. opn.] (*Carachure I*).)

In 2019, following legislative changes to the murder statutes (§§ 188, 189) Carachure filed a section 1172.6 petition.

In 2020, the trial court denied the petition at the prima facie stage.  The court found the gang-murder special circumstance precluded Carachure from relief as a matter of law.

In 2021, Carachure's appointed counsel filed a no-issue brief. (See *People v. Wende* (1979) 25 Cal.3d 436.) This court affirmed. (*People v. Carachure* (Jul 21, 2021, G059817) [nonpub. opn.] (*Carachure II*).)

In 2024, following the California Supreme Court's decision in *Curiel*, *supra*, 15 Cal.5th 433, Carachure filed a motion to recall the remittitur. Receiving no opposition from the Attorney General, this court recalled the remittitur and requested further briefing.

II.

DISCUSSION

Based on the California Supreme Court's recent *Curiel* decision, Carachure claims the trial court erred by denying his section 1172.6 petition at the prima facie stage. We agree.

"This is a purely legal conclusion, which we review de novo." (See *People v. Murillo* (2020) 54 Cal.App.5th 160, 167.) In this discussion, we will: A) review relevant principles of law; B) summarize Carachure's record of conviction; and C) analyze the relevant laws as applied to the facts.

*A. Principles of Law*

Generally, a person may be liable for a crime as a perpetrator or as an aider and abettor. (§ 31.) An aider and abettor can be held liable for crimes that were intentionally aided and abetted (target offenses); an aider and abettor could also be held liable for any crimes that were not intended but were reasonably foreseeable (nontarget offenses). (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1462–1463.)

Liability for intentional, target offenses is known as "direct" aider and abettor liability; liability for unintentional, nontarget offenses was formerly known as "'the "natural and probable consequences" doctrine.'" (*People v. Montes* (1999) 74 Cal.App.4th 1050, 1055.)

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, §

4

1, subd. (f); accord, *People v. Strong* (2022) 13 Cal.5th 698, 707–708.) The Legislature amended the relevant murder statutes: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The Legislature effectively eliminated the natural and probable consequences doctrine, while preserving direct aider and abettor liability.[2] (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)

The Legislature further added former section 1170.95 (now section 1172.6), which provides a procedure for persons convicted of "murder under the natural and probable consequences doctrine" to seek vacatur of the conviction and resentencing. (§ 1172.6, subd. (a).) "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] [s]ection 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill [No.] 1437 (§ 1172.6, subd. (a)(3))." (*People v. Strong*, *supra*, 13 Cal.5th at p. 708.) The sentencing court must then determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *Strong*, at p. 708.)

A trial court's prima facie inquiry under section 1172.6 is "limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) "'"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his

---

[2] The Legislature further amended the felony-murder rule (§ 189, subds. (e), (f)), but the felony-murder rule is not at issue in this appeal.

or her factual allegations were proved. If so, the court must issue an order to show cause.""" (*Ibid*.) At the prima facie stage, "the trial court should not decide unresolved factual issues that involve credibility determinations or weighing of evidence. Rather, it should decide such issues only after issuing an order to show cause and holding an evidentiary hearing." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811–812, fn. omitted.)

A trial court may rely on the record of conviction to determine whether a prima facie showing has been rebutted. (*Lewis, supra,* 11 Cal.5th at p. 970.) The record of conviction "allow[s] the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.) However, not all documents comprising the record of conviction are sufficient to rebut a petitioner's factual allegations. For example, while an appellate opinion is part of the record of conviction, the probative value of such opinion on the prima facie inquiry is "case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'" (*Id.* at p. 972.) [3]

"'If the petition and record in the case establish conclusively that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.'" (*Curiel, supra,* 15 Cal.5th at p. 450.) But if the petitioner has met the prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts." (*People v. Gentile, supra,* 10 Cal.5th at p. 853; accord, § 1172.6, subds. (c), (d)(1).)

---

[3] Additionally, since *Lewis* was decided, the Legislature has further limited the portions of an appellate opinion that may be considered in an 1172.6 proceeding. (§ 1172.6, subd. (d)(3).)
.

*B. The Record of Conviction*

During Carachure's trial, the court instructed the jury on direct aiding and abetting, in part, as follows: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted the perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." The instruction stated: "Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of the crime."

The trial court also instructed on the (now defunct) natural and probable consequences doctrine regarding murder liability: "Before you may decide whether the defendant is guilty of Murder or Manslaughter, you must decide whether he is guilty of Assault and/or Battery. [¶] To prove that the defendant is guilty of Murder or Manslaughter, the People must prove that: [¶] 1. The defendant is guilty of Assault and/or Battery, [¶] 2. During the commission of Assault and/or Battery a coparticipant in that Assault and/or Battery committed the crime of Murder or Voluntary Manslaughter. [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the Murder or Voluntary Manslaughter was a natural and probable consequence of the commission of the Assault and/or Battery."

The trial court further instructed on the gang-murder special circumstance: "If you decide that the defendant is guilty of First degree Murder but was not the actual killer, then, when you consider the special circumstance of Murder Committed for Criminal Street Gang Purpose . . . ,

7

you must decide whether defendant acted with the intent to kill. [¶] In order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove that the defendant acted with the intent to kill."

At the prima facie hearing regarding Carachure's section 1172.6 petition, the trial court relied on the jury's true finding on the gang-murder special circumstance allegation to deny the petition "because that circumstance requires the defendant intentionally killed the victim."

*C. Analysis and Application*

A jury's true finding on a gang-murder special circumstance allegation does not preclude a petitioner from relief under section 1172.6 as a matter of law. (*Curiel, supra,* 15 Cal.5th at pp. 460–461.) In *Curiel*, a jury convicted defendant Curiel of first degree murder and active gang participation. The jury found true a gang-murder special circumstance allegation and a gang enhancement. Curiel later filed a section 1172.6 petition, which the trial court denied at the prima facie stage. The trial court reasoned that the jury's intent to kill finding as part of the gang-murder special circumstance allegation precluded relief. (*Curiel*, at p. 440.)

The Supreme Court disagreed: "The jury's finding of intent to kill does not, itself, conclusively establish that Curiel is ineligible for relief. Curiel's allegation [in the petition] that he could not currently be convicted of murder because of the changes in substantive law enacted by Senate Bill 1437 put at issue all the elements of murder under current law. Murder liability as [a direct] aider and abettor requires both a sufficient mens rea and a sufficient actus reus. A finding of intent to kill, viewed in isolation, establishes neither." (*Curiel, supra,* 15 Cal.5th at p. 441.)

8

Here, in Carachure's section 1172.6 petition, he averred: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] 2a. At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine. [¶] . . . [¶] 3. I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1,2019."

Under the prima facie test—accepting what is asserted in Carachure's section 1172.6 petition as true—he is entitled to relief. (See *Lewis*, *supra*, 11 Cal.5th at p. 971.) The record of conviction further supports Carachure's averments. That is, at Carachure's trial, the court instructed on the jury on the (now defunct) natural and probable consequences doctrine.

Nevertheless, the trial court denied Carachure's section 1172.6 petition at the prima facie stage because the court reasoned that the jury's finding of an intent to kill as part of the gang-murder special circumstance allegation made Carachure ineligible for relief as a matter of law. But that rationale has since been squarely rejected by the California Supreme Court. (See *Curiel*, *supra*, 15 Cal.5th at p. 441; see also *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Thus, the trial court erred when it summarily denied Carachure's section 1172.6 petition at the prima facie stage. On remand, we direct the court to issue an OSC and to conduct an evidentiary hearing, as provided for in the statute. (See § 1172.6, subd. (d).)

The Attorney General argues the jury found Carachure guilty as a direct aider and abettor, rather than under the natural and probable consequences doctrine. The Attorney Generals' argument relies on the jury's

guilty verdict on the first degree murder charge, which found Carachure acted with the mental state of premeditation and deliberation. We disagree.

"Except for strict liability offenses, every crime has two components: (1) an act or omission, sometimes called the actus reus; and (2) a necessary mental state, sometimes called the mens rea. [Citations.] This principle applies to aiding and abetting liability as well as direct liability. An aider and abettor must do something *and* have a certain mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.)

"Thus, proof of [direct] aider and abettor liability requires proof in three distinct areas:  (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

Here, the jury's verdict on the first degree murder charge, and its true finding on the gang-murder special circumstance plainly establishes that the jury found Carachure intended to kill and he acted with premeditation and deliberation (the mens rea). But the first degree murder verdict and the gang-murder special circumstance do not establish—as a matter of law—that Carachure *directly aided and abetted* the murders (the actus reus).

In other words, without weighing the evidence, it is possible Carachure intended to kill, and acted with premeditation and deliberation, but he did not directly "'aid, facilitate, promote, encourage, or instigate'" the target crimes of murder (rather than the target crime of assault and/or battery under the natural and probable consequences theory). (See *Curiel, supra,* 15 Cal.5th at pp. 446, 441 ["Murder liability as an aider and abettor

10

requires both a sufficient mens rea and a sufficient actus reus. A finding of intent to kill, viewed in isolation, establishes neither"].) This is particularly true in this case because the jury was instructed on the natural and probable consequences doctrine, which is no longer a viable theory of murder liability.

We further note that Curiel was also convicted of first degree murder, but the Supreme Court did not find that Curiel's first degree murder verdict precluded relief under section 1172.6 as a matter of law. (See *Curiel, supra,* 15 Cal.5th at p. 447 [Curiel "alleged that he had been convicted of first degree murder under the natural and probable consequences doctrine"].)

The Attorney General also argues that our 2016 decision in Carachure's initial appeal, which rejected an instructional error claim under *People v. Chiu* ( 2014) 59 Cal.4th 155, bars Carachure's current claim of relief under section 1172.6 under the law of the case doctrine. (See *Carachure I, supra,* G051613.) We disagree.

"'The law of the case doctrine holds that when an appellate opinion states a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to through its subsequent progress in the lower court and upon subsequent appeal.'" (*People v. Cooper* (2007) 149 Cal.App.4th 500, 524.)

"'"The principal reason for the doctrine is judicial economy."'" (*People v. Cooper, supra,* 149 Cal.App.4th at p. 524.) "'The doctrine will not be applied, however, when such application leads to an unjust result. Because the law of the case doctrine "is merely one of procedure and does not go to the jurisdiction of the court [citations], the doctrine will not be adhered to where its application will result in an unjust decision, e.g., where . . . *the controlling rules of law have been altered or clarified* by a decision intervening between the first and second appellate determinations."'" (*Id.* at p. 525, italics added.)

11

Here, at the time of Carachure's first appeal in 2016, the natural and probable consequences doctrine was still a viable theory of murder liability. (See *Carachure I, supra,* G051613.) But in 2019, the Legislature significantly altered the laws regarding murder liability through the enactment of Senate Bill No. 1437. And since then, our Supreme Court has further clarified the laws regarding accomplice liability in the wake of the changes to sections 188 and 189. (See, e.g., *Curiel, supra*, 15 Cal.5th at p. 441 ["The jury's finding of intent to kill does not, itself, conclusively establish that Curiel is ineligible for relief"]; *People v. Reyes* (2023) 14 Cal.5th 981, 989 ["To suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense"].)

In short, given the significant intervening changes to the laws concerning murder liability since the time of our earlier nonpublished decision in 2016, both as to the relevant statutes (§§ 188, 189), and as to relevant case law, we find that the law of the case doctrine does not apply. (See *People v. Cooper*, *supra*, 149 Cal.App.4th at p. 525 [the law of the case doctrine does not apply ""where . . . the controlling rules of law have been altered or clarified" since the earlier appeal""].)

To reiterate and conclude, the jury's true finding on the gang-murder special circumstance and the first degree murder verdict do not establish as a matter of law that Carachure both "had the requisite intent" (the mens rea), and he "engaged in the requisite acts" (the actus reus), to prove he directly aided and abetted the target crime of murder. (See *People v. Duchine*, *supra,* 60 Cal.App.5th at p. 815.) And since the jury was instructed on the (now defunct) natural and probable consequences doctrine, the section 1172.6 petition cannot be denied at the prima facie stage as a matter of law.

## III.

## DISPOSITION

The trial court's order denying Carachure's petition at the prima facie stage is reversed. On remand, the court is directed to issue an OSC and to conduct an evidentiary hearing.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.